**NAVAJO FREIGHT LINES, Inc. v.
MAHAFFY et al.**

No. 3788.

United States Court of Appeals
Tenth Circuit.

April 6, 1949.

Welcome D. Pierson, of Oklahoma City,
Okl. (George F. Short, of Oklahoma City,
Okl., and Carl H. Gilbert and Wm. W.

Gilbert, both of Santa Fe, N. M., on the brief), for appellant.

B. H. Carey, of Oklahoma City, Okl. (Cantrell, Carey & McCloud, of Oklahoma City, Okl., and A. B. Carpenter, of Roswell, N. M., on the brief), for appellees.

Before PHILLIPS, Chief Judge, HUXMAN, Circuit Judge, and SAVAGE, District Judge.

SAVAGE, District Judge.

Appellees, Margaret Mahaffy, Marceline Mahaffy and Edith Jacobs, commenced this action in the United States District Court for the District of New Mexico against appellant, Navajo Freight Lines, Inc., for recovery of damages resulting from an automobile collision. Judgment was entered on separate jury verdicts for each of appellees and this appeal followed.

Mrs. Mahaffy was the owner of a two door Chevrolet automobile. Her minor daughter, Marceline, and Miss Jacobs were riding with her in the automobile as her guests. On August 16, 1946, the car was struck by a tractor-trailer type of truck owned and operated by Navajo Freight Lines, Inc., at a point on or near Highway 66 in the vicinity of the filling station of the Laguna Trading Company at Laguna, New Mexico. The car was precipitated over a steep embankment and came to rest on the bank of the San Jose River. Each of the appellees suffered personal injuries and the Chevrolet was demolished.

The appellant complains of error in the admission and exclusion of evidence and in the giving of instructions to the jury. The evidence deemed material to the issues raised here will be narrated.

Miss Jacobs testified that she had been driving the car and parked adjacent to the East pump of the filling station facing East, parallel with the highway and 10 to 12 feet distant therefrom; that she turned off the motor, set the emergency brake and placed the car in gear; that she and Mrs. Mahaffy were out of the car for about ten minutes with Marceline remaining therein; that after they returned to the car Mrs. Mahaffy took the driver's seat and she was preparing to take the back seat; that she was standing stooped over in the car placing the skirt of her playsuit, which she had removed, on some luggage when the impact occurred, and that the motor had not been started and the car had not moved before being struck.

Mrs. Mahaffy corroborated the testimony of Miss Jacobs and, in addition, testified that after re-entering the car she was looking between the two front seats for her sun glasses at the time of impact; that she had not released the emergency brake, had not started the motor, had not taken the car out of gear, and the car had not moved; that after the car was struck, it turned over and over and finally went down the embankment which was about 40 feet deep, and that some men took her out of the car immediately after the accident and carried her to the top of the embankment.

Marceline testified that she remained in the car and that while watching Miss Jacobs she observed the back part of the truck strike the back part of the car; that the motor of the car had not been started, and the car had not moved.

The driver of the truck, L. C. Davis, testified that he was driving easterly along the highway at a speed of from 35 to 40 miles per hour; that when about 250 feet West of the filling station he saw the automobile moving very slowly from the filling station in a northeasterly direction and approaching the highway at an angle; that he took his foot off the accelerator, applied his brakes and slowed his speed to about 30 miles per hour; that he thought the automobile would stop before entering the highway and didn't attempt to stop the truck; that the automobile did not stop, but proceeded onto the highway at a point 50 or 60 feet in front of his truck; that at the time there was a Dodge car on the bridge over the San Jose River, located about 120 feet easterly from the filling station, approaching from the East; that he thought he could go between the Chevrolet automobile and the approaching Dodge but misjudged his distance; that the Chevrolet forced him to the left over the center line of the highway; that his left fender struck the Dodge and as he swung his tractor to the right the trailer hit the Chevrolet; that at the time of the collision

he was within 25 feet of the bridge and his tractor-trailer came to a stop across the pavement.

Abraham, a witness called by Navajo, testified that he was employed at the trading post at the time of the accident and saw the collision; that he saw the Chevrolet car parked beyond the East pump facing in an easterly direction; that after the ladies re-entered the car, he saw the automobile roll down grade onto the highway in front of the truck; that the truck pulled to the left and first struck the Dodge car approaching from the East and then struck the Chevrolet at a point some 35 to 45 feet West of the bridge; and that he did not hear the motor of the Chevrolet started or hear the motor running as the car moved from the filling station to the highway.

A map drawn to scale by Ross, a licensed engineer, was received in evidence. It demonstrated the grade of the highway for a considerable distance in each direction from the point where the collision occurred, the location and elevation of the filling station with respect to the highway, the location of the San Jose river bridge with respect to the filling station and the distance and grade from the filling station to the bridge. A number of photographs were in evidence portraying the grade of the highway and the character of the terrain. These exhibits show that the highway beginning about 2000 feet West of the filling station and extending to the bridge is down grade; that there is a substantial slope down grade from the filling station to the highway and thence to the bridge; and that the filling station is approximately 120 feet from the West end of the bridge.

It is urged by Navajo that the trial court erred in permitting Mrs. Mahaffy to relate, over objection, a conversation had with the truck driver occurring shortly after the accident. Mrs. Mahaffy testified that right after the accident she had been removed from the automobile and, while she was being carried up the embankment, she asked, "who struck us?" and the truck driver replied, "I did, lady, my brakes jammed." The testimony was admitted by the court on the ground that the statement of the driver constituted an admission against interest.

It is a rule of general application that admissions made by an agent after the occurrence of an accident are not admissible in evidence against the principal for the reason that the making of admissions is not within the scope of the agent's authority. Vicksburg & Meridan Railroad Company v. O'Brien, 119 U.S. 99, 7 S.Ct. 118, 30 L.Ed. 299; Northern Central Coal Company v. Hughes, 8 Cir., 224 F. 57. While the rule has been followed with substantial unanimity, it has been criticized and there appears to be logical basis for such criticism. See Wigmore on Evidence, 3d Edition, Sec. 1078.

In Northern Central Coal Company v. Hughes, supra, the testimony of a witness reciting an oral statement made to him by the superintendent of the defendant coal company 3 or 4 days after the accident was held improperly admitted as beyond the scope of the superintendent's authority. In commenting on this case, Professor Wigmore says:

"* * * it is absurd to hold that the superintendent has power to make the employer heavily liable by mismanaging the whole factory, but not to make statements about his mismanagement which can be even listened to in court; the pedantic unpracticalness of this rule as now universally administered makes a laughing stock of court methods." 4 Wigmore on Evidence, 3d Edition, page 121, Note 2.

In the recent case of Whitaker v. Keogh, 144 Neb. 790, 14 N.W.2d 596, it was held that a statement made by an agent immediately after an automobile collision should have been received in evidence, in an action brought against the principal, as an admission against interest. The conclusion reached by the court in that case apparently stems from Wigmore's criticism of the general rule excluding such statements.

But if the evidence be deemed inadmissible on the ground stated by the court, it does not follow that error resulted from such admission. If the admission was proper on any ground, it is of no consequence that the court might have given the wrong reason for its admission. Wilcox v. Berry, 32 Cal.2d 189, 195 P.2d 414; Woodward v. City of Waterbury, 113 Conn.

457, 155 A. 825; 5 C.J.S., Appeal and Error, § 1464(c), page 82.

■ We conclude that the statement of the truck driver was admissible as a spontaneous declaration under the res gestae exception to the hearsay rule. This exception was discussed with clarity in Chesapeake & Ohio Railway Company v. Mears, 4 Cir., 64 F.2d 291, 292, where the court held admissible as a spontaneous declaration the statement made by the injured man as to the cause of injury. Judge Parker, speaking for the court, said:

"* * * There is some authority for the position of defendant that the declaration of decedent should be excluded as a mere narrative of a past transaction; but we think that the better rule, and that supported by the weight of modern authority, requires its admission as having been made under the immediate influence of the occurrence to which it related and so near the time of that occurrence as to negative any probability of fabrication. See 31 Yale L. Journal 229, 35 H.L.R. 447; Wigmore on Evidence (2d Ed.) § 1747 et seq. and cases cited. As pointed out by Professor Wigmore, it is not necessary to render such declarations admissible that they be strictly contemporaneous with the occurrence to which they relate and admissible under what it called the 'Verbal Act' doctrine. They are admissible, not because they fall without the hearsay rule, as in the case of 'verbal acts,' but because they fall within an exception to that rule; it being considered that there is a sufficient guarantee of the trustworthiness of such declarations to render them admissible, if they are made under the immediate influence of the occurrence to which they relate. 'The circumstantial guarantee here consists in the consideration * * * that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief.' To render them admissible what is required is: (1) There be some shock to the feelings sufficient to render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i. e. while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance'; and (3) it must relate to the circumstance causing the shock to the feelings. Wigmore on Evidence (2d Ed.) § 1750."

■ One of the better statements of the rationale of this exception to the hearsay rule and the factors governing its application is found in Perry v. Haritos, 100 Conn. 476, 124 A. 44, 47, where it was held that it was error to exclude the testimony of an officer repeating a statement made to him by a truck driver immediately following a collision. After quoting from Wigmore on Evidence, Section 1747, the court said:

"The courts which have adopted this exception to the hearsay rule follow closely Wigmore's exposition, and neither they nor jurists who have written upon this subject have been able to add anything of consequence to this exposition; but their reiteration has tended to clarify it. When the declaration follows some startling occurrence, and is made with reference to it by one having an opportunity to observe the matter of which he speaks, and in such close connection to the event and under such circumstances as to negative the opportunity for deliberation and fabrication, and to indicate that it was a spontaneous utterance growing out of the nervous excitement and mental and physical condition of the declarant it is reasonably probable that it is trustworthy. The spontaneity of the utterance is the guaranty of its trustworthiness. If the utterance does not relate to the accident or occurrence, or the declarant has had no opportunity to observe that of which he speaks, it cannot fall within this principle. The relation of the utterance in point of time to the accident or occurrence, while an important element to be considered in determining whether there has been opportunity for reflection, is not decisive. The element of time, the circumstances and manner of the accident, the mental and physical condition of the declarant, the shock produced, the nature of the utterance, whether against the interest of the declarant, or not, or made in response to question or involuntary, and any other material facts in the surrounding circumstances are to be weighed in ascertaining the basic conclusion

whether this utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance, and misrepresentation. The principle rests upon the common experience that utterances made under such circumstances are void of self-interest, and are in the same category as exclamations of pain. The probability of falsehood is so remote as to be negligible. * * *"

The evidence in the instant case clearly establishes that the declaration of the truck driver was made shortly after the collision occurred and at the scene of the accident. Mrs. Mahaffy testified that she was removed from the automobile immediately after the collision and asked the question which prompted the declaration of the truck driver while being carried up the embankment by some men who came to her assistance. Davis, the driver of the truck, testified that the collision caused the door of the truck to fly open and he was thrown out but was still hanging to the steering wheel; that he released his grasp of the steering wheel and dropped to the ground before the truck stopped; that he then ran down into the canyon to help the people out of the car; that right after the ladies were taken out of the car one of them asked who hit them and he replied, "I did, lady, I am the truck driver"; but he denied having said that the brakes jammed.

The accident was a serious one. The injuries suffered by Marceline especially were of a grave character. She was bleeding profusely and the extent of her injuries were not readily determinable. There can be little doubt but that Davis was shocked and thrown into a state of nervous excitement by the accident. The short interval between the collision and the declaration indicates that this condition persisted until after the utterance of the statement. The declaration was against the interest of Davis, as well as the interest of his employer. These facts all point irresistibly to the conclusion that the statement was made without deliberation and was a spontaneous declaration. Furthermore, it was closely connected with the accident and tended to explain it.

Navajo suggests that the declaration was not spontaneous because made in response to a question. It is doubtful that the statement of the truck driver that his brakes jammed may properly be considered as a response to the question asked by Mrs. Mahaffy but, in any event, the declaration was not made inadmissible because elicited by a question. See William C. Barry, Inc., v. Baker, 1 Cir., 82 F.2d 79; Overland Construction Company v. Sydnor, 6 Cir., 70 F.2d 338.

▪▪ We have not overlooked the established rule that it is the duty of the trial court in the first instance to determine from the evidence whether the declaration was spontaneous and therefore admissible under the res gestate exception. Aetna Life Insurance Company v. Kern-Bauer, 10 Cir., 62 F.2d 477; William C. Barry, Inc., v. Baker, supra. But appellate courts have frequently considered factual situations comparable to our case and decided that the trial court abused its discretion in rejecting declarations thought not to be part of the res gestae. Balle v. Smith, 81 Utah 179, 17 P.2d 224; Rast v. Mutual Life Insurance Company of New York, 4 Cir., 112 F.2d 769; Linderoth v. Kieffer, 162 Minn. 440, 203 N.W. 415; Perry v. Haritos, supra. Where, as here, the declaration is admitted by the trial court on another ground, but it is clearly disclosed by a reading of the record that the declaration was admissible under the res gestae exception, it would serve no useful purpose to require a new trial to permit a ruling on the question by the trial court.

Navajo next complains of the exclusion by the court of proffered testimony with respect to the results of experiments conducted shortly before the trial designed to show that a car parked on the filling station grounds where the witnesses stated that the Mahaffy car was parked would coast, after some movement causing the car to start, onto the highway between the filling station and the bridge if the emergency brake was released and the car was not in gear. This evidence was rejected by the court upon the grounds that an adequate showing had not been made that the conditions were substantially the same

when the experiments were made as existed at the time of the accident, and that such evidence would tend to confuse the jury.

■ The party offering evidence of out-of-court experiments must lay a proper foundation by showing a similarity of circumstances and conditions. The admission of experimental testimony is a matter resting largely within the discretion of the trial court. Beckley.v. Alexander, 77 N.H. 255, 90 A. 878; National Pressure Cooker Company v. Stroeter, 7 Cir., 50 F.2d 642; Collins v. Graves, 17 Cal.App.2d 288, 61 P.2d 1198. As stated by the court in Hisler v. State, 52 Fla. 30, 42 So. 692, 695:

"* * * Evidence of this kind should be received with caution, and only be admitted when it is obvious to the court, from the nature of the experiments, that the jury will be enlightened, rather than confused. In many instances, a slight change in the conditions under which the experiment is made will so distort the result as to wholly destroy its value as evidence, and make it harmful, rather than helpful."

■ It was not shown that a similar automobile was used in conducting the experiment. Nor was it shown that the climatic conditions and the wind resistance were the same. Collins v. Graves, supra. We are unable to say that the court's exclusion of the evidence constituted an abuse of discretion.

■ There is still another reason why the ruling of the court was not erroneous. The evidence appears to be wholly immaterial. The photographs, the map drawn to scale and the testimony of witnesses all establish, without contradiction, that there was a sufficient grade from the filling station to the highway to permit a car not in gear and not braked to coast from the filling station onto the highway. It may be said to be a matter of common knowledge that an automobile in neutral gear and unbraked will roll down hill once it starts moving. The proffered testimony was cumulative and would have served only to prove an undisputed fact.

It is the final contention of Navajo that the court committed error in giving an instruction to the jury as to the speed at which a motor vehicle may lawfully be driven. The jury was told in substance that no motor vehicle should be driven at a greater speed than is reasonable and prudent, having due regard to all conditions then existing. The instruction is conceded to be in conformity with New Mexico law, but it is said that there is no evidence that the speed of the truck was excessive.

■ In seeking the answer to this contention, we need not look beyond the testimony of Davis, the driver of the truck. The tractor-trailer had an overall weight of almost seven tons. The highway was in bad condition, narrow and the edges were frayed. He was driving down grade at a speed of from 35 to 40 miles per hour. He saw the Chevrolet moving slowly toward the highway when he was 250 feet from the filling station. He checked his speed to 30 miles per hour. He then saw the Dodge approaching from the East. It was on the San Jose river bridge, the West entrance to which is about 120 feet from the filling station. The bridge is about 20 feet wide, the same width as the highway. He maintained the speed of 30 miles per hour until the collision occurred, thinking he could go between the Chevrolet and the Dodge. True enough, the statutory speed limit for trucks in New Mexico was 50 miles per hour and the driver was not guilty of negligence per se. Section 68-504b, N.M.Stats. Ann. 1941. But it was for the jury to say whether the speed at which the truck was being driven at the time of the accident was reasonable and prudent under the existing conditions disclosed by the evidence.

Affirmed.