UNITED STATES, Appellee

v.

ANCE MOUNTS, Sergeant, U. S. Army, Appellant

1 USCMA 114, 2 CMR 20

No. 73

Decided January 31, 1952

COL. M. W. Ludington, USA, and 1st Lt. Charles H. Taylor, USA, for Appellant.

MAJ. George B. Springston, USA, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

### I

The accused, Mounts, was charged with sodomy in violation of Article of War 93, 10 USCA § 1565. Upon trial by general court-martial, held at Fort Lewis, Washington, on May 24, 1951, he was found guilty of having carnal connection per os with a four and one-half-year old boy, feloniously and against the order of nature. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances to become due after the date of the order directing execution of the sentence, and to be confined at hard labor for three years. The case comes to us on petition granted on October 9, 1951, under the provisions of the Uniform Code of Military Justice, Article 67(b)(3), 50 USCA § 654.

### II

The record reflects that on the afternoon of April 25, 1951, the victim's mother was a guest at a social function held in military residential quarters near the scene of the alleged crime. The mother testified that at approximately 3:30 she observed Freddy, the twin brother of the victim, approaching the front of the home in which she was visiting and hastily proceeded to the entry in order that he might not sound the bell to the disturbance of other guests. She stated that the child appeared excited, and that as she opened the door he "blurted out" that his twin brother, Bucky, had recently engaged in the commission of an act of the nature here charged. The record is unclear on the question of whether Freddy indicated that he had witnessed the act, or whether his statement was based on information furnished by his twin. Following her interview with Freddy the witness sought Bucky, located him in quarters occupied by her own family, and questioned him concerning the assertions made by his brother. She indicated that she "asked him if he did that" and that he responded in the affirmative. The victim then guided his inquiring mother to a group of warehouses in one of which it was stated the incident occurred. The testimony reported above was elicited from the mother at the trial over the vigorous objection of counsel for the accused. The testimony of other military personnel placed the accused in the general vicinity of the scene of the offense at or near the time it was alleged to have been committed—but went no further than this. The only remaining evidence took the form of a complete confession of guilt reduced to writing by an agent of the local Criminal Investigation Detachment and signed by Mounts after warning of his rights under Article of War 24, 10 USCA § 1495. This document was received without objection. Neither the victim nor his twin brother was called as a witness.

### III

The following errors have been assigned by appellate defense counsel:

1. That the board of review erred in affirming the action of the trial court in admitting the testimony of the victim's mother, over the objection of the defense, as to what she was told by her sons, Bucky and Freddy.

2. That the board of review erred in affirming the action of the trial court in admitting, for the consideration of the court, the confession of the accused.

3. That the board of review erred in affirming the action of the trial court in denying the motion of the defense, at the conclusion of the prosecution's evidence, for a finding of not guilty.

4. The testimony of the mother being incompetent, and the confession

**116**

of the accused being inadmissible, that the trial court erred in holding the evidence before the trial court sufficient to sustain the findings of guilty.

## IV

The foregoing assignments of error will be dealt with in reverse order. On the assumption that both the testimony of the mother and the confession of the accused were not available for the consideration of the court-martial, we are certain indeed that the remaining evidence is insufficient to support the findings. Apart from the two mentioned items, there is in truth no evidence whatever that the offense charged was committed by anyone—a fortiori by the accused. Apart from them, the record contains literally nothing save the testimony of five soldiers to the effect that the accused was seen in the neighborhood of Building 3150, Fort Lewis, Washington, the probable locus of the offense, at or near the time at which the transaction is said to have taken place —itself highly indefinite.

## V

At the termination of the case for the prosecution, defense counsel moved for findings of not guilty, specifying the accused's position with regard to the claim of insufficiency. Following lengthy arguments thereon by both trial and defense counsel, accompanied by citations of authority, the court denied the motion. Thereafter at the conclusion of the case for the defense, the motion was renewed and once more denied. Paragraph 72a, Manual for Courts-Martial, 1949, has the following to say on this subject:

"At the close of the case for the prosecution and before the opening of the case for the defense the court may, on motion of the defense for findings of not guilty, consider whether the evidence before the court is legally sufficient to support a finding of guilty as to each specification designated in the motion. . . . If there is any substantial evidence which, together with all reasonable inferences therefrom and all applicable presumptions, fairly tends to establish every essential element of an offense charged or included in any specification to which the motion is directed, the motion as to such specification will not be granted. . . . If the motion is sustained as to any specification the court will forthwith enter a finding of not guilty of such specification and, when appropriate, of the proper charge."

On the assumption made in the preceding paragraph, and for reasons made apparent therein, we are sure that the defendant's motion for findings of not guilty should have been granted. As we have already indicated, the record contains no slightest shadow of evidence of guilt on the part of the accused, apart from the mother's testimony and his own confession. On the other hand, it should be said with equal firmness that with these items properly before it, the court was amply justified in refusing to grant the offered motion. The propriety of admitting the accused's statement and the mother's report of the declarations of the two boys will, of course, be considered later in this opinion. At this point, however, it should be remembered that this evidential material was in fact before the court—properly or no—at the time it acted on the defendant's motion. For this reason it cannot be said that error was committed at that time and under those circumstances—regardless of any conclusion which may be reached ultimately concerning the correctness of the law member's ruling on the admissibility of the questioned testimony and the confession. Because of the use by the board of review of a short decision in this case, its views on the present problem are unavailable to us in specie.

## VI

The following language is used in paragraph 127a, Manual for Courts-Martial, 1949:

"An accused cannot be legally convicted upon his uncorroborated confession. A court may not consider the confession of an accused as evidence against him unless there is in the record other evidence, either di-

rect or circumstantial, that the offense charged has probably been committed; in other words, there must be substantial evidence of the corpus delicti other than the confession. `. . .` This evidence of the corpus delicti need not be sufficient of itself to convince beyond reasonable doubt that the offense charged has been committed, or to cover every element of the charge, or to connect the accused with the offense. . . ."

From what has been earlier said, it is apparent that support for the confession in this case depends ▮▮▮ entirely on the competence of the testimony of the victim's mother as to what she was told concerning the offense by her sons, Freddy and Bucky. Neither of these boys was called as a witness, and without the mother's testimony the record is totally devoid of evidence that an offense of the nature charged was in fact committed. With this testimony, however, we entertain no doubt that there was "in the record other [substantial direct] evidence . . . that the offense charged has probably been committed." Under these circumstances there would indeed have been "substantial evidence of the corpus delicti other than the confession," as required by the Manual in force at the time of trial. It is true, of course, that the statements of the children, as reported to the tribunal through the agency of their mother, did not purport to identify Mounts, or in any way seek to relate him to the incident alleged to have taken place in Building 3150. It is equally true, however, in the words of the Manual, that "This evidence of the corpus delicti need not . . . connect the accused with the offense." It follows, therefore, that if the court properly admitted the mother's testimony, it did not err in admitting also the confession of the accused. On the other hand, if the conclusion be reached that the questioned testimony should not have been heard, it must be held that the court's acceptance of the confession was error.

## VII

It is obvious that the determination of admissibility of the mother's testimony constitutes the crux of the problem before us. As has been suggested, our decision on this point will at the same time dispose of all assignments of error, save the third, which has already been dealt with finally. If properly admitted, this evidence may be regarded as establishing the corpus delicti, thus justifying the admission the confession. With these two items properly before the court, there can be no doubt concerning the sufficiency of the evidence. The remainder of this opinion will be devoted to a consideration of principles having to do with the competence of the evidence given by the victim's mother.

It is clear that this testimony—as regards the communications of both sons —was hearsay and hence inadmissible, except as it might be brought under one of the recognized exceptions to the historic rule excluding evidence of this character. It consisted of reports of statements of persons who were not at the time of making or thereafter either under oath, present in court, or subject to cross-examination. Yet these statements, presented through the testimony of another, were offered to establish the truth of the matter asserted in them, and not merely to demonstrate that they were in fact made. Given the purpose for which they were introduced as a part of the government's case against the accused, they would have been entirely useless unless true. Appellate government counsel urges that this evidence is admissible under the recognized exception to the hearsay rule denominated spontaneous exclamations in that it consisted of utterances made under such circumstances of shock or surprise as to indicate that they were not the result of reflection or design, but were made spontaneously and without opportunity for fabrication. Let us see if this is so.

Unlike the legitimate verbal act doctrine, to the products of which the hearsay rule is inapplicable, and the bastard and unhelpful catchphrase res gestae of nebulous meaning, the spontaneous exclamation constitutes a genuine exception to the hearsay principle. Wigmore

on Evidence, 3d ed., 1940, paragraph 1747, phrases its rationale thus:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

The same notions are generally expressed in both the Manual for Courts-Martial, 1949, paragraph 128b, and the Manual for Courts-Martial, United States, 1951, paragraph 142b. The following language is quoted from the former Manual, in force at the time of trial in the instant case:

"It sometimes happens, however, that an utterance constituting a part of the res gestae [sic] was made under such circumstances of shock or surprise as to show that it was not the result of reflection or design but made spontaneously. Evidence of an utterance shown to have been made under those circumstances may be introduced for the purpose of proving the truth of the utterance itself."

Dean Wigmore sets out three limitations on, or requirements for, the admissibility of utterances of this nature. These are: (a) a startling occasion, (b) a statement made before time to fabricate, (c) a relationship of the statement to the circumstances of the occurrence. Wigmore on Evidence, supra, paragraph 1750. In addition, the learned writer indicated that these and only these limitations may be deduced legitimately from the judicial expositions of the principle. With regard to the first requirement he says in the same paragraph:

"There must be some occurrence, startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting. Such a limitation does not appear to be in terms expressly required in the judicial definitions; but it is a necessary implication from their language. Moreover, in practically all of the instances—involving statements after corporal injury by violence—such conditions are in fact present, and this requirement is fulfilled."

But appellate government counsel has asserted that the Wigmore analysis suggests that the limitation that there must be a "main" or "principal" fact is a spurious one, which has been borrowed by some courts from the verbal act doctrine, and not a part of the hearsay exception under consideration here. This is perfectly true, and the same result is found in the decisions of other tribunals through the use of such language as "all declarations which are 'part of the transaction' are admissible" —borrowed from the administration of the res gestae phrase. Both of these heresies have the effect of improperly enlarging the spontaneous exclamation exception and have no proper place in it. However, the fact remains that regardless of the verbalization used, there must be some independent evidence of the exciting, startling, or surprising event which circumstantially guarantees the offered hearsay utterance before it may be accepted by the court. It would be faulty and circuitous reasoning with a vengeance to permit the questioned declaration itself to furnish the essential basis for its own guaranty. To allow this would, indeed, be to allow an item of evidence to raise itself to the level of admissibility by its own bootstraps. Despite his animadversions on careless borrowings in this area from thinking on the subject of verbal acts and res gestae, Dean

**119**

Wigmore is not at all out of accord with our own views on the present subject. See Wigmore on Evidence, supra, paragraph 1761, where in his discussion of a woman's complaint of rape as a special form of the spontaneous exclamations exception to the hearsay rule, he says that:

"There is, however, an apparent flaw in this argument, which seems to nullify it. For example, in a railroad collision, we have the exciting causes known by other evidence; and under other Exceptions to the Hearsay rule—for example, regular entries, we first prove the regularity of the entries by other evidence. Now in the present case, if we accept the complaint testimonially, do we not admit it in advance as evidence of these very circumstances which should first be proved to make it admissible?

"The solution seems to be as follows: If there is no other evidence of an assault, or where there is evidence merely of intercourse but not necessarily against the woman's consent, we are in truth committing the error of accepting her statement as itself evidence of the very facts which should first be otherwise shown in order to make the declarations spontaneous. But if there is already other evidence of a violent assault, and the statement is useful as disclosing the identity of the assailant or the further circumstances of the assault, we are not reasoning in a circle, and there is no objection to admitting the statement."

Reference must be made to two further relevant limitations on the principle under consideration. ■ In view of the very nature of the circumstantial guaranty of trustworthiness contemplated, it must appear that the utterance was made under the stress of nervous excitement. The declaration, it is commonly said, must be "spontaneous," "natural," "impulsive," "instinctive," or "generated by an excited feeling which extends without let or breakdown from the moment of the event they illustrate." It is generally inadmissible if it is "calm and uncomplain-

120

ing," "deliberative," or "involuntary," or if the declarant is "mentally composed"—and the utterance is usually regarded as dubious per se if made in response to questions.

On the basis of the fundamental and well-recognized principle applicable to all testimonial evidence, ■ the declarant under this hearsay exception, as well as under others, must appear to have had an opportunity to observe personally the transaction he purports to describe. Because this requirement is almost always in fact fulfilled, it is infrequently the subject of detailed judicial exposition. Nevertheless, it is a highly appropriate—even essential—one and must be considered when we come to deal with the facts of the case at bar.

Most of the considerations we have mentioned received illustration and support recently in a decision of the United States Court of Appeals for the District of Columbia involving a fact situation closely related to that of the instant case. Brown v. United States, 152 F. 2d 138 (C. A. D. C. Cir.). Here the accused was convicted of assault on a four-year-old girl who did not testify at the trial. Some three hours after the alleged assault the victim recounted the facts of the appellant's act at the dinner table. The child did not "complain" and was neither excited nor physically marked. In the trial court the child's mother was permitted to repeat her account over the objection of counsel, and this was approved by the Municipal Court of Appeals. In a well-considered majority opinion by Edgerton, J., the court held the report to be inadmissible on the ground that it was not a spontaneous utterance and that there was no independent evidence of an "exciting event." The court said at pages 139–40:

"Even if the child had been mentally disturbed when she told her story, the present case would not have been within the established doctrine of spontaneous statements. *This exception to the hearsay rule has commonly been applied only when there has been independent evidence of an exciting event;* testimony other than

the hearsay statement has proved that a collision occurred, a shot was fired, or the like, and the hearsay has served only to identify the actors or to specify their conduct. If, for example, there is no evidence of any assault except A's testimony that B cried 'Smith shot at me'; we do not convict Smith of assault, however excited B's cry appears to have been. It is not apparent that this principle should be ignored when the assault charged is an indecent one." (emphasis supplied)

It remains to distinguish Snowden v. United States, 2 App. D. C. 89, and Beausoliel v. United States, 71 App. D. C. 111, 107 F. 2d 292, mentioned in briefs of counsel. In the first of these cases, the court permitted the grandmother of a five and one-half year old girl, the victim of an assault, to testify concerning the statements the child made to her. In the second, a mother was permitted to furnish the court testimonially with declarations made to her by her daughter as to an indecent assault made on the latter. However, in both of these cases there was independent evidence, apart from the exclamations, of the necessary substructive event. In Brown v. United States, supra, at page 140, the court explained the full meaning of the two earlier holdings and distinguished them carefully from the case before it:

"In Snowden v. United States the complaining child, when she made her statement to her grandmother, not only was crying but bore unmistakable marks of an assault. In Beausoliel v. United States the child not only 'had a peculiar expression on her face' when she made her statement to her mother but also testified directly, at the trial, to the assault. *In the present case the hearsay evidence is the only evidence that any assault took place.*

"Reversal of appellant's conviction will not, as has been suggested, grant legal immunity to men who abuse children in secret. As we held in the Snowden and Beausoliel cases, if a child makes spontaneous statements they are admissible in evidence *when a foundation is laid for them,* and either the child's condition or the child's testimony may lay the foundation." (emphasis supplied)

Turning now to the case at bar, we will first consider the admissibility of the mother's testimony concerning the utterances of the child, Freddy. In our opinion the court erred in receiving this evidence for two reasons. In the first place the record is totally devoid of other evidence of the shocking event essential to admissibility—apart from the equally unguaranteed declarations of his twin and the confession of the accused, the acceptance of which hinges on the establishment of the corpus delicti. Neither child testified at the trial, and neither bore indication of having been injured or harmed in any way. In the second place, as we have suggested earlier, the record is unclear on the question of whether Freddy's statements to his mother were based on personal knowledge. It seems probable that they were, but it cannot be said that no doubt exists. Conceding that Freddy's report met minimal standards of spontaneity—and in all likelihood it did, in fact—this of itself is not enough. In Commonwealth v. Fugmann, 330 Pa. 4, 198 A. 99, 106, the following language is used in this connection:

"Neither the solemnity attending a 'dying declaration' nor the spontaneity characterizing a 'res gestae declaration' makes the substance of such a declaration competent when by the standards of legal evidence it is incompetent. The solemnity attendant upon the one and the spontaneity of the other are mere avouchments of sincerity and not unchallengeable passports of admissibility."

With regard to the mother's account of Bucky's statements, we are also of the opinion that the trial court erred in its admission—and likewise for two reasons. The first of these is identical to the initial reason for the exclusion of Freddy's declarations, and the second has to do with the uncomplaining

**121**

character of the boy's report to the witness. Freddy's declarations were spontaneous—certainly in the sense that they were voluntary and unprompted by inquiry—and probably fully so from a legal point of view. Bucky's on the other hand, appear not to have been natural and impulsive outgrowths of the accused's alleged misconduct, but rather to have taken the form of a calm and deliberate narrative of past events under examination by his mother. This, too, is fatal to their acceptance under the hearsay exception urged upon us. The point we are seeking to make is expressed in the following two quotations. The first is from Keefe v. State, 50 Ariz. 293, 72 P. 2d 425, 428:

> "In the present case there was nothing indicating any shock or nervous excitment on the part of the children as a result of the crime charged when the statements were made to the father and mother.

> "We are compelled to hold that the testimony of the father and mother of the children in the present case does not fall within that exception to the hearsay rule known as spontaneous exclamation, for the reason the evidence in no way indicates that the statements of the children were the result of nervous excitement and shock caused by the crime with which the defendant is charged, . . ."

And the second is from Illinois Central Ry. Co. v. Lowery, 184 Ala. 443, 63 So. 952, 953:

> "The declaration must be instinctive rather than deliberative—in short, the reflex product of immediate sensual impressions, unaided by retrospective mental action. These are the indicia of verity which the law accepts as a substitute for the usual requirements of an oath and opportunity for cross-examination."

It should also be said that the testimony of the mother with respect to the utterances of her two sons does not fall within the doctrine of fresh complaint. The Manual for Courts-Martial, 1949, paragraph 128c, uses the following language in this connection:

> "In cases involving sexual offenses, such as rape, statutory rape, sodomy, attempts to commit such offenses, assault with intent to commit rape or sodomy, and indecent assaults, evidence that the *alleged victim* of such an attack made complaint within a short time is admissible. This evidence is to be restricted to proof that a complaint against the accused was made, the details of the offense related during the course of making the complaint being inadmissible under this rule. *Evidence of fresh complaint is received solely for the purpose of corroborating the testimony of the victim and not for the purpose of showing the truth of the matter stated in the complaint.* However, when it is shown that the complaint was made while the victim was in such a state of shock occasioned by the attack as to give warrant to a reasonable conclusion that the complaint was not the result of reflection or design but was made spontaneously, the complaint, as well as the details of the attack related during the course of making it, may be received in evidence as tending to prove the truth of the matters stated." (emphasis supplied)

In view of what has been said earlier of the facts of this case touching the statements of Bucky and Freddy, no further comment is required to support our conclusion under this head.

Thus, we can perceive no theory or principle under which the declarations of the children could properly have been received in evidence. From this it follows that the court-martial erred in receiving the mother's testimonial account thereof, and from this in turn that there was no legal basis for the reception of the accused's confession. At this point the following quotation from Keefe v. State, supra, at page 426, where a conviction of sodomy was reversed, seems appropriate:

> "The crime charged is of such a nature that every right-minded man or woman views it with horror and aversion, and especially when committed by an adult upon the person

of a child. But for this very reason justice requires particular care that one charged with such a crime should not be convicted thereof on insufficient or improper evidence."

For the reasons set forth herein the decision of the board of review is reversed and the record will be returned to The Judge Advocate General, United States Army, for action consistent with the views expressed herein. Pursuant to the terms of the Uniform Code of Military Justice, Article 67(f), the convening authority will thereafter determine the practicability of a rehearing in this case. See Uniform Code of Military Justice, Article 67(e), Manual for Courts-Martial, United States, 1951, paragraph 92, and Index and Legislative History, Uniform Code of Military Justice, HH, p. 1180, HR, p. 30, and SR, p. 27.

Chief Judge QUINN and Judge LATIMER concur.