UNITED STATES, Appellee

v

THURLOW B. KNIGHT, III, Private First Class,
U. S. Army, Appellant

12 USCMA 229, 30 CMR 229

*First Lieutenant Talbot J. Nicholas* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel W. H. Blackmarr* and *First Lieutenant Burnett H. Radosh.*

*Lieutenant Colonel Gilbert G. Ackroyd* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy, Captain William A. Zeigler* and *First Lieutenant Stanley M. Wanger.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

A general court-martial convicted accused of taking indecent liberties with a minor child, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and sentenced him to dishonorable discharge, total forfeitures, confinement at hard labor for seven years, and reduction to the lowest enlisted pay grade. The convening authority approved, except that he reduced the term of imprisonment to five years. Thereafter, a board of review in the office of The Judge Advocate General of the Army affirmed the findings and sentence. Accused then petitioned this Court, seeking reversal of his conviction for the alleged offense. We granted his petition for review in order to consider the following single issue:

"Whether there was sufficient independent evidence of the 'exciting event' to make the spontaneous exclamation admissible."

A short narration of facts is desirable in order to place the granted issue in its proper perspective. The eight-year-old German girl victimized by accused's despicable actions lived with her parents on an upstairs floor of a building in which a restaurant was located. In a hallway on the ground floor was a service window for the restaurant, a staircase leading to the apartments upstairs, and the door to the men's restroom. Not wishing to subject the child to the ordeal of recounting the horrifying details of the incident, trial counsel did not call her as a witness. However, a waitress at the restaurant testified that on the evening in question accused was present as a customer. While he was there, at approximately 7:45 p.m. the victim appeared at the service window to obtain two bottles of beer. The child, who appeared happy and friendly, laughed, took the beer and left. Some eight to ten minutes later, the witness saw the victim again as the latter emerged from the men's restroom. She was excited and crying, and had flushed red cheeks. Shortly thereafter accused came out of the restroom. When, seeing the child and noticing her condition, the waitress inquired what the strange man had done, the victim interrupted her and without any hesitation stated that he had lifted her skirt, pulled down her underclothes, and performed a certain repulsive and obviously indecent act. Thereupon, the witness sent the child upstairs to her mother and had accused remain until the military police came and escorted him away. That, together with a detailed confession by the accused which the record established was executed voluntarily after proper warning, constituted the prosecution's case.

At trial, the defense objected to the witness' recitation of the remarks made by the child upon emerging from the men's room on the grounds that the

**230**

statements were inadmissible hearsay. Trial counsel responded that the evidence fell within a permissible and recognized exception to that rule as a spontaneous exclamation. After hearing arguments and citations of authority on the point in an out-of-court hearing, the law officer overruled the defense counsel's objection and allowed the testimony into evidence. It is that ruling which accused here seeks to have us overturn for, he asserts, without the child's complaint, there is insufficient evidence to corroborate his confession. United States v Isenberg, 2 USCMA 349, 8 CMR 149; United States v Landrum, 4 USCMA 707, 16 CMR 281; United States v Villasenor, 6 USCMA 3, 19 CMR 129; United States v Mims, 8 USCMA 316, 24 CMR 126; United States v McFerrin, 11 USCMA 31, 28 CMR 255.

In one of our early cases, United States v Mounts, 1 USCMA 114, 2 CMR 20, we were confronted with this same problem. There, in considering the foundation necessary for admission of spontaneous exclamations by children of tender years who have been victimized by sexual misconduct, we noted, among others, the prerequisite that the Government introduce independent evidence of an unusual or exciting event. Judge Brosman, writing for a unanimous Court, used the following language to express that requirement:

". . . However, the fact remains that regardless of the verbalization used, there must be some independent evidence of the exciting, startling, or surprising event which circumstantially guarantees the offered hearsay utterance before it may be accepted by the court. It would be faulty and circuitous reasoning with a vengeance to permit the questioned declaration itself to furnish the essential basis for its own guaranty. To allow this would, indeed, be to allow an item of evidence to raise itself to the level of admissibility by its own bootstraps."

There we found the evidence lacking in that respect, as likewise we did more recently in United States v Anderson, 10 USCMA 200, 27 CMR 274. Indeed, appellate defense counsel, in urging reversal in the instant case, place strong reliance on those decisions. To the extent that the principles announced in those two cases are controlling in this instance, that contention is correct. But insofar as the defense asserts that those cases compel reversal here, reliance is misplaced, for when this record is weighed in the balance it is apparent the opposite result is required.

A short comparison of facts should suffice to make the matter clear. In *Mounts, supra,* pretermitting a confession by that accused, we found the record totally devoid of any evidence of a shocking event except for the declarations of the victim and his twin brother. With regard to the *Anderson* case, supra, a majority of the Court likewise concluded the prosecution had failed to establish the necessary predicate for the child's statement. There the record contained no evidence of injury or other physical indication of an untoward incident; there was no testimony that the parents noticed any mental disturbance when the child was first observed or at any time before she was disciplined; and we found nothing concerning her appearance or demeanor prior to the statements she made to her parents that aroused suspicion of foul play; and even assuming the victim's presence at the time inside the dwelling where the crime allegedly was committed—a questionable conclusion—there was no indication, apart from his confession, that accused or anyone else was also present. Moreover, there was nothing from which it could be reasonably inferred that a visit with neighbors was not commonplace.

In sharp contrast to those situations are the facts presently before us. Here the victim was an eight-year-old girl who lived up the stairs in the same building. Certainly by reason of her age and familiarity with the premises, it is most unlikely she would have entered a men's restroom by reason of mistake or through curiosity. Likewise, there is little reason to believe she might have entered from necessity while running a short errand; she was, after

all, in a hallway of the building where her own dwelling was located just a few short steps away. Furthermore, there is, in the case at bar, no doubt that the child and accused—who was a stranger to her—were indeed closeted in such a place as their presence together would be wholly unexpected in the course of ordinary events. And additionally, the record portrays a cheerful laughing girl who was transformed into such a highly upset and excited young child that the first person to observe her was unqualifiedly convinced that something unnatural had transpired. In that regard, it is to be remembered that the transformation occurred in a period of only a few minutes—during which time the child was known to have been with accused in a place from which she would ordinarily be barred. Surely this showing is sufficient to establish that the mental disturbance arose and the child volunteered her utterance under conditions which guarantee that it was related to an unusual event and that it was spontaneous, without reflection, and not the product of her imagination.

In connection with the child's emotional disturbance, we have not failed to consider appellate defense counsel's argument that evidence of her excitement cannot be used to show both the spontaneity of her complaint and, as well, the unusual event that occasioned it. Clearly an utterance by ■ itself may not be used to establish a startling event and thus provide the basis for its own admission in evidence. That is the teaching of United States v Mounts, supra, where we refused to countenance such circuitous reasoning. The short answer to the defense contention, however, is that here we do not have merely a spontaneous statement, nor is any reliance placed on the victim's utterance as a predicate for its own admission. Other factors to which we have adverted point toward an unusual incident, and the young girl's demeanor as she came out of the men's restroom —wholly apart from the statement she then made—fixes with some degree of certainty the occurrence of a startling event.

Neither are we impressed by the defense argument that the victim's complaint was precipitated by a question from the waitress. In point of fact the record shows that the child even interrupted her and voiced complaint without hesitation. Certainly this was not "a calm and deliberate narrative of past events under examination." United States v Mounts, supra, at page 122. As we said in United States v Nastro, 7 USCMA 373, 376, 22 CMR 163:

"... The fact that Fueser prefaced the statement with a question as to what had happened does not require its exclusion."

Manifestly, the posture of the evidence in this instance presents a picture wholly different than those in the *Mounts* and *Anderson* cases and dictates the conclusion that the law officer did not err in allowing the victim's spontaneous exclamation into evidence.

Accordingly, the granted issue is resolved adversely to petitioner, and the decision of the board of review, therefore, is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

Hard cases, like great cases, make bad law. In the language of one of our most distinguished jurists, they "exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend." Northern Securities Co. v United States, 193 US 197, 401, 48 L ed 679, 24 S Ct 436 (1904). So it is here, for I am convinced that the influence of the horrible and revolting crime to which accused has voluntarily confessed leads my brothers erroneously to evaluate the proof of the predicate for the admission of the victim's spontaneous exclamation. In so doing, they ignore both the precedents established in our own cases and those decided in other Federal jurisdictions. While I join in the repugnance which a sexual attack upon a child must evoke in any normal human being, I prefer not to allow my emotions to control my reason

and thereby to deny to this accused the right to have plain hearsay excluded.

As the author of the principal opinion notes, the evidence in this record consists solely of the accused's confession and testimony of a barmaid to whom the victim, an eight-year-old girl, had recited the details of the assault. Proper objection was made to the use of the little girl's out-of-court declarations to the witness, but the law officer admitted them as spontaneous exclamations. That ruling was apparently made on the ground that the barmaid had also testified to the following facts. Approximately ten minutes before the incident, the victim appeared to be happy and friendly. She obtained two bottles of beer from the witness and left the service window of the bar over which the maid presided. The witness next observed her leaving the men's toilet. At that time, the little girl was excited, crying, and had flushed cheeks. The barmaid asked her what the "uncle" had done to her, and the so-called spontaneous exclamation followed. A few minutes later, the accused was seen to leave the restroom. On that basis, it is found that there is sufficient independent evidence of a startling or exciting event to justify the receipt of the hearsay testimony of the barmaid.

An utterance concerning the circumstances of a startling event, made by a person while he was in such a condition of excitement, shock, or surprise, caused in turn by his participation in or observation of the event, so that a reasonable inference is warranted that he made the utterance as a spontaneous and instinctive outcome of the event, and not as a result of deliberation and design, is admissible as an exception to the hearsay rule. Manual for Courts-Martial, United States, 1951, paragraph 142b. In order to admit that spontaneous exclamation, there must be evidence of the event causing the excitement, shock, or surprise, independent of that found in the utterance itself. United States v Mounts, 1 USCMA 114, 2 CMR 20; United States v Anderson, 10 USCMA 200, 27 CMR 274.

The reason for the requirement that independent evidence of the exciting event be adduced was succinctly set forth by the late Judge Brosman in United States v Mounts, supra, at page 119:

". . . However, the fact remains that regardless of the verbalization used, there must be some independent evidence of the exciting, startling, or surprising event which circumstantially guarantees the offered hearsay utterance before it may be accepted by the Court. It would be faulty and circuitous reasoning with a vengeance to permit the questioned declaration itself to furnish the essential basis for its own guaranty. To allow this would, indeed, be to allow an item of evidence to raise itself to the level of admissibility by its own bootstraps."

The learned Dean Wigmore reached the same conclusion in his monumental treatise. Wigmore, Evidence, 3d ed, § 1761. See also Special Text 27–132, Evidence, The Judge Advocate General's School, U. S. Army, 1959, page 1901.

In United States v Mounts, supra, we were confronted with testimony that one of the children alleged to have made the spontaneous utterances there involved appeared "excited" at the time he blurted out his story. Assuming spontaneity to exist, we found no independent proof of the event which led to the excitement. In United States v Anderson, supra, evidence was called to establish that, sometime after the incident but prior to the victim's relation of its details, the little girl involved was seen to be nervously playing with her fingers. Approximately one-half hour later, she approached her father and patted the front of his trousers, making statements which aroused the suspicion of the parents. Questioning resulted in the revelation of the details of an assault upon her. There was also proof that she thereafter suffered nightmares for some weeks and had to be given sedation to relieve her condition. Specifically refusing to rule upon the effect of the lapse of time between the incident and the victim's relation of the details, we held that the little girl's statements to her parents

**233**

were not admissible in evidence, as there was no independent evidence of the exciting event. Over the Chief Judge's dissent, Judge Latimer stated, at page 204:

". . . Here, as in the *Brown* and *Jones* cases, supra, *the only evidence that any indecent assault took place was the hearsay itself*. We have no testimony from the child and no evidence reflecting injury to her. When the mother examined the body of the child after learning of the alleged acts, she found no bruises, scratches, or irritation *to indicate that the criminal acts had in fact been performed. Prior to the statements made by the infant to her parents, there was nothing in her appearance or demeanor which aroused suspicion of foul play*." [Emphasis partially supplied.]

Turning to the transcript before us, I am unable to find any circumstances which tend to establish that an exciting event, *i.e.*, the assault upon the child, had occurred. True, she was excited and her cheeks were red. The first circumstance has been expressly rejected as evidence of the event's occurrence. United States v Mounts, supra. The second is little more than another manifestation of the first, for it indicates only the existence of excitement or, perhaps, a normal degree of shame at having entered a men's restroom. The last circumstance is her exit from that room followed, after the passage of several minutes, by the accused. Can it seriously be contended that this single additional event serves to establish the independent existence of the conduct to which the declarations of the victim pertained? Without engaging in the sheerest of speculation or considering the contents of the exclamation itself, it seems impossible to infer from these circumstances that the little girl had undergone the harrowing experience involved. And if we are to speculate, it seems more likely to conclude that she, through curiosity or otherwise, had entered the men's room and, having observed, or been observed by, the accused, became frightened and fled. Of course, we know that is not

what happened, but we know it only because of the victim's statements and the accused's confession which is otherwise uncorroborated.

As noted above, the law is clear that there must be independent evidence of the exciting event in order to admit a spontaneous exclamation. United States v Mounts, supra; United States v Anderson, supra. It is equally well established that the exciting event must be the one to which the exclamation related. Wigmore, supra, §§ 1750, 1754; Navajo Freight Lines v Mahaffy, 174 F 2d 305 (CA 10th Cir) (1949); Chesapeake & O. Ry. Co. v Mears, 64 F2d 291 (CA 4th Cir) (1933). Thus, in Lampe v United States, 229 F2d 43 (CA DC Cir) (1956), admission of a spontaneously uttered identification by a homicide victim of his assailants was approved because of the separate proof of his severe injuries at the time of the statement. And in Guthrie v United States, 207 F2d 19 (CA DC Cir) (1953), the diabolical injuries visited upon the defendant's victim were also independently established.

On the other hand, in Jones v United States, 231 F2d 244 (CA DC Cir) (1956), the Court of Appeals reversed for the failure otherwise to establish the exciting event upon which the spontaneous exclamation was allegedly based. There, the evidence demonstrated that the child was seen by her mother running from a laundry room in the basement of the building in which they lived. The child was crying and related the details of a revolting assault upon her body to her mother. In holding this proof insufficient, Circuit Judge Bastian pointed out the lack of any showing that the child was injured or marked. And in Brown v United States, 152 F2d 138 (CA DC Cir) (1945), the same court reversed for lack of independent evidence of the event causing the exclamation, stating, at page 139:

"Even if the child had been mentally disturbed [excited] when she told her story, the present case would not have been within the established doctrine of spontaneous statements. This exception to the hearsay rule

has commonly been applied only when there has been independent evidence of an exciting event; testimony other than the hearsay statement has proved that a collision occurred, a shot was fired, or the like, and the hearsay has served only to identify the actors or to specify their conduct. . . . In Snowden v United States the complaining child, when she made her statement to her grandmother, not only was crying but bore unmistakable marks of an assault. In Beausoliel v United States the child not only 'had a peculiar expression on her face' when she made her statement to her mother but also testified directly, at the trial, to the assault. In the present case the hearsay evidence is the only evidence that any assault took place."

It is significant that we quoted from the *Brown* case and cited the *Jones* case, both with approval, in United States v Anderson. As in those cases, the child here did not testify, and the evidence *aliunde* her declaration and the accused's statement cannot serve as the basis for an inference that she was assaulted. As that was the act to which her declarations referred, it must have been separately established to admit her testimony. United States v Mounts, supra; Navajo Freight Lines v Mahaffy, supra. At it was not, the hearsay utterances made to the barmaid were not admissible in evidence. Their elimination leaves only the accused's confession of guilt in the record and requires reversal. United States v McFerrin, 11 USCMA 31, 28 CMR 255; United States v Isenberg, 2 USCMA 349, 8 CMR 149.

In reaching this conclusion, I am aware of the desirability of avoiding the use of an infant victim as a witness if such is possible. That does not mean, however, that we should transform the rule requiring evidence of a startling event into one merely necessitating proof of excitement. Such a result is simply contrary to the law which we have heretofore laid down and, no matter how repellent his offense, this accused is entitled to the benefit of the safeguard involved in the predication of the receipt of spontaneous exclamations upon independent proof of the event which caused them.

I would reverse the decision of the board of review and, in view of the availability of the prosecutrix as a witness, order a rehearing.