UNITED STATES, Appellee

v

EDWARD M. GASKIN, Staff Sergeant,

U. S. Air Force, Appellant

12 USCMA 419, 31 CMR 5

No. 14,799

June 30, 1961

*Major Quincey W. Tucker, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel James L. Kilgore.*

*Major James Taylor, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Colonel Merlin W. Baker.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was tried by general court-martial upon a charge of committing a lascivious act upon a male child under the age of sixteen years, with intent thereby to gratify his sexual desire, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was convicted of the specification and Charge with certain exceptions. Intermediate appellate authorities affirmed, and The Judge Advocate General, United States Air Force, certified two questions to this Court with respect to the case. They are more fully set out below.

### I

The first inquiry of The Judge Advocate General relates to the findings and is stated as follows:

"a. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE FINDINGS OF THE COURT CONSTITUTED THE OFFENSE OF INDECENT ACTS WITH ANOTHER, IN VIOLATION OF ARTICLE 134?"

Upon finding the accused guilty, the court-martial excepted the language from the specification alleging the victim's age and the intent with which accused acted. Thus, as found, the specification details accused's conduct as follows:

"In that Staff Sergeant Edwin M. Gaskin, United States Air Force, 5040th Food Service Squadron, did, at or near Anchorage, Alaska, on or about 15 May 1960, commit a lascivious act upon the body of . . . [J D A, Jr.] by placing his penis between the legs of the said . . . [J D A, Jr.]."

Appellate defense counsel urge that the foregoing verdict does not include words of criminality, *i.e.,* an averment that the acts were done "wrongfully" or "unlawfully," and argue that accused has been found guilty of no offense. In reply, the Government points out that the specification describes accused's act as "lascivious" and argues that the offense found is

essentially that approved by this Court in United States v Sanchez, 11 USCMA 216, 29 CMR 32.

We believe the position of the United States is correct and conclude that the specification, as ▮▮ amended by the findings of the court-martial, properly alleges the offense of indecent acts with another. In United States v Sanchez, supra, this Court had before it an almost identical specification alleging that the accused, on a date certain, " 'did . . . *wrongfully* commit an indecent, lewd, and lascivious act' " (emphasis supplied) with a named person and describing that act. No difficulty was encountered in sustaining the sufficiency of the averments there involved. The result should not be different simply because accused's act here was described only as lascivious and because the word "wrongfully" was not included.

The term "lascivious" is synonymous with "lewd" or "indecent" and inclusion of the latter adjectives in addition to the ▮▮ former adds nothing to the specification. United States v Hobbs, 7 USCMA 693, 23 CMR 157. Indeed, "lascivious" has been defined, along with "obscene" and "lewd," as signifying "that form of immorality which has relation to sexual impurity." Swearingen v United States, 161 US 446, 40 L ed 765, 16 S Ct 562 (1896). Another authority refers to its meaning as that which is "lewd; indecent; obscene; sexual impurity; tending to deprave the morals in respect to sexual relations; licentious." Black's Law Dictionary, 4th ed, page 1024. Accordingly, it is clear that the use of the term "lascivious" alone is sufficient so to characterize accused's act that no other descriptive words were needed.

In like manner, omission of the words "wrongfully" or "unlawfully" was not fatal. Use of the ▮▮ term "lascivious" in connection with the type of act here alleged excludes any possibility that accused's behavior was accidental or that the conduct charged could reasonably be interpreted as innocent. Manual for Courts-Martial, United States, 1951, paragraph 28a. Moreover, in United States v Bunch, 3 USCMA 186, 11 CMR 186, we pointed out that it was unnecessary to include words imparting criminality in a specification, the averments of which implicitly contain a charge that the acts there set out were in themselves criminal. The act which is here alleged and characterized as lascivious fairly shouts its criminal nature. The inclusion of the words "wrongfully" or "unlawfully" would, therefore, be a mere formality. Hence, we conclude that the specification, as modified by the court-martial's findings, sufficiently states the offense of indecent acts with another, in violation of Code, supra, Article 134.

## II

The second issue on which we are asked to pass by The Judge Advocate General is as follows:

"b. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE TESTIMONY OF THE FATHER AS TO STATEMENTS MADE TO HIM BY THE CHILD VICTIM SOON AFTER THE ALLEGED OFFENSE WAS ADMISSIBLE UNDER THE 'SPONTANEOUS UTTERANCE' EXCEPTION TO THE HEARSAY RULE?"

Resolution of this question requires that we refer to the evidence regarding the child's report to his father. The record reflects the occurrence of the following circumstances.

Accused occupied an apartment adjoining that of the victim's family. Accused's wife was caring for the victim, then four years of age, and his brother while their mother was sleeping. The victim's father was in the living room of his own apartment. Suddenly, the victim, clad only in his underwear, came running into the room from accused's apartment. He seemed "kind of proud" as if something that "wasn't routine" had happened. The fly of his underwear shorts bore a wet substance which appeared to be semen. The child's attitude was "unusual" and one which he exhibited only on "extreme occasions." Approximately

**421**

thirty minutes prior to the victim's return to his own apartment, his father had heard the accused call to the victim and state that he wished to apologize to him.

Walking up to his father, the victim, holding his shorts, said " 'Look, Daddy' " and directed the father's attention to the wet stains on his shorts. Thereafter, he related to his father the details of the assault upon him.

Based upon the foregoing, the law officer permitted the father to recite the victim's statement concerning what had occurred, and the victim was not called as a witness. Subsequently, the victim's mother testified that she went to the accused's apartment shortly after the victim's report and retrieved her other child. At that time, the accused was lying on his bed and his legs were bare. The younger child was on the same bed.

The question of the admissibility of spontaneous exclamations is not novel in this Court. See United ■ States v Mounts, 1 USCMA 114, 2 CMR 20; United States v Anderson, 10 USCMA 200, 27 CMR 274; and United States v Knight, 12 USCMA 229, 30 CMR 229. While each of us has, from time to time, differed on the question whether there was a sufficient predicate established for the use of such evidence, none of us has ever doubted that evidence of an utterance concerning the circumstances of a startling event is admissible, provided it was made by the declarant while he was excited, shocked or surprised, and there is independent evidence of the event which led to the existence of the excitement, shock, or surprise. United States v Mounts; United States v Anderson; United States v Knight, all supra. See also Manual, supra, paragraph 142b, and Wigmore, Evidence, 3d ed, § 1761. Here, the accused contends that the victim's declarations to his father were inadmissible both because there was no evidence that he was excited and because the existence of the event leading to that excitement was not independently established. We are unable to agree with either contention.

With regard to the evidence of the declarant's excitement, the record depicts that he appeared ■ "proud," that his attitude was "unusual" and that he acted as if he had participated in something quite beyond his normal ken. While the father did not expressly state that the victim was upset, it is clearly inferable from his testimony that the declarant was operating under the stress of the event which had transpired. It must be remembered that we deal here with a state of mind rather than the use of a precise term to describe it. United States v Anderson, supra. Thus, "proud" and "unusual" in the context of this record clearly impart that the four-year-old victim was "excited" within the meaning of the exception to the hearsay rule. Accordingly, we hold that this prong of the defense argument is without merit.

In like manner, we must reject the contention that the evidence *aliunde* the declaration does not ■ establish the exciting event. It was shown that the victim was playing on the accused's bed in his apartment and that the accused was lying on the same bed. The victim emerged from the bedroom and ran back to his own apartment. The accused had earlier attempted inexplicably to apologize to him. Although he was only four years of age, his underclothing bore wet seminal stains. True it is that a medical expert testified on behalf of the defense that it was "possible" for the stains to have been produced by the child's own ejaculation, but this goes only to the weight of the separate proof and does not preclude its use as a predicate for the admissibility of the spontaneous exclamation.

In United States v Mounts, supra, we were unable to find any independent evidence to support the existence of the event which allegedly gave rise to the victim's excitement. In United States v Anderson, supra, a divided Court differed on whether the record was sufficient to establish the requisite foundation. In like manner, we disagreed on the inferences to be

drawn from the evidence presented in United States v Knight, supra. Unlike those cases, there is clearly in this transcript "some independent evidence of the exciting, startling, or surprising event which circumstantially guarantees the offered hearsay utterance." United States v Mounts, supra, at page 119. Accordingly, we hold that the board of review correctly decided the issue regarding the admissibility of the victim's excited utterance to his father.

The certified questions are answered in the affirmative, and the decision of the board of review is affirmed.

Chief Judge QUINN concurs.