UNITED STATES, Appellee

v.

EUGENE L. JACKSON, Private E–1, U. S. Army, Appellant

4 USCMA 294, 15 CMR 294

No. 3943

Decided May 14, 1954

MAJ Edwin Doran, U. S. Army, and 1ST LT Jack J. Albert, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial in Germany convicted the accused of willful disobedience of a lawful command, in violation of Article 90, Uniform Code of Military Justice, 50 USC § 684, and sentenced him to dishonorable discharge, total forfeitures, and confinement at hard labor for two years. On appeal, a board of review reduced the confinement to one year, but otherwise affirmed the findings of guilty and the sentence. We granted the accused's petition for review to consider the following issue:

"Whether the law officer was required to instruct on the elements of failure to obey."

While performing his duties as Officer of the Day, First Lieutenant Piasecki, one of the accused's company officers, heard loud noises emanating from the billets. On entering the corridor of the billets, he encountered a group of eight or ten men. Apparently, some of the group were trying to stop a fight and get Private Bradley, one of the participants, into his own room.

Lieutenant Piasecki had seen the accused and some of the others somewhat earlier. He had been called as Officer of the Day to settle an altercation with a taxi driver over payment of the fare. The Lieutenant reminded the group of his prior admonition about early retirement. He called attention to the fact that it was past bed check, and he directed them to go to bed. The group dispersed. However, instead of proceeding to his own room on the upper floor, the accused started for Bradley's. When stopped by Lieutenant Piasecki, he insisted that he had to talk to Bradley. The Lieutenant informed the accused that he could see Bradley in the morning and expressly told him that he wanted the accused "to go to bed right now." The accused merely stood there and looked at him; it was "more or less a look of contempt." Thereupon, Lieutenant Piasecki stated: "Jackson, this is a direct order . . . I am giving you a direct order to report to your room immediately and to go to bed." The accused did not move for a few seconds,

but then started toward the stairway at the end of the corridor. About halfway down, he "just lingered" and talked to some of the others. Lieutenant Piasecki walked over and informed him that he had given him a direct order. Whereupon, the accused moved slowly toward the stairway. Again, he stopped and talked. When Lieutenant Piasecki walked up to him, the accused made no move. Finally, the Lieutenant called upon some of the men present to witness the fact that the accused had not carried out his orders, and he left. About ten minutes had elapsed between Lieutenant Piasecki's appearance in the billets and his departure.

The accused testified in his own behalf. He did not dispute the evidence of Lieutenant Piasecki's initial efforts to disperse the group. He believed that in his "lecture" to the group, Lieutenant Piasecki blamed him for both the immediate disturbance and the earlier incident with the taxi driver. Accordingly, he made several efforts to talk to Lieutenant Piasecki, but the latter would not listen to him. He testified that when these efforts failed, he started up the stairs to his own room. Halfway up, he turned back in a final attempt to talk to Lieutenant Piasecki. He categorically denied knowledge of the order to go to bed until Lieutenant Piasecki asked some of the group to witness his refusal to comply with the direct order given to him. When Lieutenant Piasecki left the billets, the accused immediately went to his own room and to bed.

The accused's claim of a lack of knowledge of the order was supported by the testimony of Private Phillips, who was present at the scene. Phillips said that, although he was nearer to Lieutenant Piasecki than the accused, he did not hear any order given to the accused. He attributed his failure to hear any such order to the fact that he "was busy telling Jackson to go up to his room and to bed and he [the accused] was busy repeating that he just wanted to speak to the lieutenant." Additionally, evidence was introduced to show that, while not drunk, the accused had been drinking since early afternoon; and at the time of the critical events there was a great deal of confusion. There was testimony by witnesses, one of whom appeared for the prosecution, that at no time was the accused disrespectful or insolent toward Lieutenant Piasecki.

At the conclusion of the case, the law officer instructed on the elements of the offense charged. Amplifying his instruction on willful disobedience, he said:

"The willful disobedience contemplated in this article is such as shows an intentional defiance of authority, as when an enlisted person is given a lawful command by an officer to do or cease doing a particular thing at once and refuses or deliberately omits to do what is ordered. A neglect to comply with an order through heedlessness, remissness, or forgetfulness is an entirely different offense chargeable under Article 92. That is not the willful disobedience that is required here."

Defense counsel requested an instruction on the lesser offense of a failure to obey, but the request was denied.

The necessity of instruction on lesser degrees of the offense charged has frequently been before this Court. We have consistently held that, in a proper case, a failure to instruct on a lesser included offense is prejudicial error. A proper case arises when the lesser offense is reasonably raised by the evidence, and the accused has not otherwise waived his right to the instruction. See: United States v. Glover, 2 USCMA 164, 7 CMR 40. The accused maintains that the evidence here reasonably raised the offense of failure to obey as a lesser included offense of willful disobedience, and, consequently, it was error for the law officer to deny the request for an instruction on the lesser offense. We do not agree.

Clearly, the defense case was based on the theory that so much noise and confusion abounded at the time of the order that the accused could not and did not hear it. Thus, the accused testified unqualifiedly that, "I did not hear him give me a direct order." In one form

or another, he repeated this assertion several times in the course of his testimony. This contention was supported by testimony of Phillips to the effect that he was standing between the accused and Lieutenant Piasecki, and did not hear any order given to the accused. In addition, the evidence of the accused's tippling was plainly intended to suggest diminution of his normal attentiveness, particularly in the midst of the general confusion of persons and voices.

As indicated by the evidence, the issue was not whether the accused's disobedience was deliberate, as opposed to unintentional, but whether the order was actually heard by him. The order demanded immediate compliance, but the accused's own testimony demonstrates that he did not comply with it until after Lieutenant Piasecki called for witnesses to his disobedience. If he heard the order, the accused's testimony amounted virtually to a judicial confession of deliberate refusal to obey. He specifically admitted that, in spite of Lt. Piasecki's refusal to talk to him, he persisted in his efforts to engage him in conversation. According to Lieutenant Piasecki's testimony, the last attempt occurred after the order had been given for the third time. The accused did not go to his room until Lieutenant Piasecki left the scene.

The evidence raised but one alternative to conviction of the offense charged. Either the accused heard the order and was guilty of deliberate and intentional disobedience, or he did not hear the order, and, therefore, was not guilty. Accordingly, the refusal to instruct on the lesser included offense was not error.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.