UNITED STATES, Appellee

v

EDDIE B. WILLIAMS, Airman Third Class,
U. S. Air Force, Appellant

7 USCMA 434, 22 CMR 224

No. 8722

Decided December 7, 1956

*Captain Richard C. Bocken* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Stanley S. Butt* and *Major Edmund B. Sigman.*

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray.*

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A board of review affirmed the special court-martial conviction of the accused of larceny of a radio, in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715, and his sentence to a bad-conduct discharge (suspended), partial forfeiture of pay, and confinement at hard labor for five months. We granted review to consider the legal sufficiency of the president's instructions.

**435**

The Air Police at Orlando Air Force Base, Florida, suspected the accused of receiving, and keeping, mail addressed to an officer having the same surname. In the course of a search of the accused's effects in connection with that matter, Master Sergeant Turrisi noticed a maroon, portable radio. He impounded it because it resembled a radio which had been reported as missing by an Airman Wright. Later, the accused was taken into custody, advised of the provisions of Article 31 of the Uniform Code of Military Justice, 50 USC § 602, and questioned about the possession of the radio. As a result of the interrogation, the accused signed and swore to a statement in which he admitted that he took the radio.

At the trial, the accused objected to the admission of his pretrial statement on the ground that it was involuntary. Testifying in support of the objection, he said that the interrogators told him that if he admitted theft of the radio, "they would drop all other charges, pornographic books and the mail," for which he could be confined for twelve years. Moreover, one of them purportedly remarked that the "Captain" had directed that the accused be locked up if he did not sign a confession. Sergeants Turrisi and O'Connell, who were the accused's interrogators, denied making any such promise or threat. Sergeant Turrisi admitted discussing with the accused his receipt of mail addressed to a Colonel Williams, but he denied making any promise to drop the charges. He also testified that this subject came up after the accused had orally confessed to the larceny. Sergeant O'Connell testified that the matter came up while "the interrogation was running along," and that Sergeant Turrisi remarked that "legal would probably drop" the mail charge because the accused's name and that of the colonel "were too similar to actually produce anything on it."

Following argument by counsel, the president admitted the confession subject to objection by any court member. Neither at that time nor in his final instructions did the president advise the court members that they could consider the evidence of voluntariness in their deliberations on the guilt or innocence of the accused. No request for such an instruction was made. The accused now contends that he was prejudiced by the president's failure to instruct the court-martial on the significance of his ruling admitting the confession.

Like the law officer of a general court-martial, the president of a special court-martial must instruct the court members upon the principles of law required for an intelligent and informed determination of the accused's guilt or innocence. United States v Pinkston, 6 USCMA 700, 21 CMR 22. In United States v Davis, 2 USCMA 505, 512, 10 CMR 3, we held it is error for the law officer not to instruct the court-martial that his ruling that a confession is voluntary and entitled to be admitted into evidence does not preclude them from considering the facts relating to the issue in their final deliberations on the findings. It follows, therefore, that the instructions here are erroneous because they do not include an explanation of the limited effect of the ruling on voluntariness.

Impliedly the Government concedes error. However, quoting from United States v McDonald, 14 CMR 679, 682, it maintains that since the president's ruling was subject to objection by the other court members, each member was necessarily aware of his individual right to determine "whether the confession met all requirements of admission," and, therefore, the error was not prejudicial. See also United States v Fraser, 17 CMR 790. The difficulty with this position is that it disregards the fundamental difference between a ruling on the admission of evidence and the determination of the accused's guilt or innocence.

A confession obtained by "the use of coercion, unlawful influence, or unlawful inducement" is inadmissible. Article 31(d), Uniform Code of Military Justice, 50 USC § 602; United States v Cudd, 6 USCMA 630, 20 CMR 346. If conflicting evidence is presented regarding the presence of one or another

of these circumstances, a ruling in favor of admissibility does not end the matter. Instead, the court members are still free to consider the question during their deliberations on the findings. United States v Dykes, 5 USCMA 735, 19 CMR 31. In a special court-martial a further difference exists.

A ruling by the president on the admissibility of a confession is subject to objection by any court member. Article 51(b), Uniform Code of Military Justice, 50 USC § 626; United States v Pulliam, 3 USCMA 95, 11 CMR 95. Consequently, if a member objects, the matter must be decided by vote of the court. Of course, the failure to object to a ruling admitting a confession indicates the members' conclusion that it was properly obtained. But the absence of an objection does not establish that the members know they can again consider the question in their deliberations on the findings. As a practical matter, a court member may have difficulty mentally separating his agreement with the president's ruling on the legal sufficiency of the evidence of voluntariness for the purpose of admitting the confession from his individual determination of factual sufficiency in regard to the accused's guilt or innocence (see United States v Dykes, supra, page 741), but it is important that he know of his right to do so. A contested question of admissibility is decided by a simple majority of the members, but a determination of guilt demands the concurrence of two-thirds of the members. Article 52, Uniform Code of Military Justice, 50 USC § 627. Since a court member is not presumed to know the law (United States v Keith, 1 USCMA 442, 4 CMR 34), it is reasonable to assume that if an objection is interposed but overruled by a majority vote, no member would know, in the absence of instruction, that he can reconsider the matter in his later deliberations on the findings.

Here, there was no objection by any member. Hence, it is arguable that all members concurred in the conclusion of voluntariness. Therefore, it would be idle to suppose that, in the absence of additional evidence, they would change their minds during their consideration of the findings. This view, however, deprives the court members of the opportunity to reappraise the evidence of voluntariness. See United States v Trede, 2 USCMA 581, 10 CMR 79. Concededly, none of the members may change their minds, but it is not unlikely that at least some of them might. We cannot disregard the fact that a member's decision to adhere, or to object, to a ruling by the president is made with much less deliberation than his decision on the accused's guilt or innocence. A less hurried and a more thorough evaluation of the evidence might lead him to a different conclusion. In our opinion, therefore, the president's failure to instruct the court members of their right to consider the voluntary nature of the confession during their deliberations on the findings deprived the accused of a substantial benefit.

As a final argument for affirmance of the conviction, the Government contends that, in his testimony █ on the preliminary issue, the accused volunteered the information that his confession was true. From that premise, it concludes that the accused cured the instructional error. The argument is persuasive, but it is not supported by the accused's testimony. In pertinent part, his testimony reads as follows:

"Q. On this statement, they told you it would be a sworn statement didn't they?

A. Yes, sir.

"Q. They told you that what you wrote would be sworn and that you had to tell the truth, didn't they?

A. *Yes, sir, what I wrote was.*

"Q. Then you wouldn't lie about anything that was contained in it would you?

"PRES: The witness is not required to answer that. You can only question the witness regarding the voluntary nature, not about what the man said or what he intended to say. Strike that last question completely.

"TC: What I was getting at was that he understood what he was signing and then he complied with the directions on which he signed. Do you see what I mean?

"PRES: I don't understand the question myself. Could you make it a little more clear?

"TC: Sir, it is difficult for me to get around it without referring to what is in there.

"PRES: This court will not hear what is in there. We want to get only testimony concerning whether he said what is in there on a voluntary or involuntary basis, or any information surrounding the giving of that statement, but not what is on it.

"TC: I believe it would be allowable to read from Orlando Air Force Base Form No. 176 which is used in the conduct of this investigation or any statement, and if so permitted, I would like to read the context on the top of this form.

"PRES: The court has already heard testimony from this witness to the effect that he was advised of his rights under Article 31 before he went out into this room and the paper was handed to him. If you can present something along that line before the paper was handed to the accused, it might be a proper question of the witness, but I don't know what you intend to ask him concerning this form. I do know that I will not let this witness testify to anything other than those that I read in the instructions just a little while ago." [Italics supplied.]

The italicized words are those which the Government maintains constitute the accused's judicial admission of the truthfulness of his confession. However, it seems to us that the accused did no more than answer trial counsel's question. He merely acknowledged that he was told that "what . . . [he] wrote" was to be the truth; he did not say that he actually recited the truth in his pretrial statement. This interpretation is made clear by trial counsel's next question and the colloquy which it brought on. This question asked about the truth of the contents of the confession. The president stopped the accused from answering and cautioned the trial counsel about questioning him on any matter "other than those that . . . [he] read in

**438**

the instructions just a little while ago." The instructions referred to were the standard instructions given to an accused who elects to testify on the question of the voluntariness of a pretrial statement. Part of these instructions are to the effect that if the accused limits his testimony to the circumstances surrounding the taking of his statement, he cannot "be asked on cross-examination whether the confession or admission is true or false."

Manifestly, the discussion between president and trial counsel is utterly meaningless if either believed that the accused had already admitted the truth of his confession. On the other hand, it is entirely understandable and necessary, in the light of the meaning we attribute to the accused's testimony. Moreover, even if the accused's testimony is regarded as ambiguous, an appellate tribunal should not lightly disregard the meaning ascribed to it by the trial personnel. United States v Cambridge, 3 USCMA 377, 12 CMR 133; see also United States v Jackson, 4 USCMA 294, 15 CMR 294. We conclude, therefore, that the accused's testimony did not amount to a judicial admission of the truth of his confession so as to remove the question of voluntariness from the consideration of the court members during their deliberations on the findings.

Earlier we mentioned that defense counsel made no request for an appropriate qualifying instruction. Since this is a special court-martial case in which defense counsel was neither a lawyer nor certified in accordance with Article 27(c), Uniform Code of Military Justice, 50 USC § 591, we do not consider the omission as a waiver of the deficiency. United States v Moore, 4 USCMA 675, 16 CMR 249.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside, and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge FERGUSON concurs.

Judge LATIMER concurs in the result.