## UNITED STATES, Appellee

v

## THOMAS W. WHISENHANT, Airman Third Class, U. S. Air Force, Appellant

## 17 USCMA 117, 37 CMR 381

No. 19,734

June 30, 1967

 
 

*Lieutenant Colonel William A. Howland, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel David B. Stevens* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

This is a general court-martial case in which the accused was arraigned, tried and convicted of assault with intent to commit murder, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for twenty years, and reduction to Airman Basic. Except for the reduction in grade, the convening authority approved the sentence as imposed by the court-martial. A board of review in the office of the Judge Advocate General of the Air Force thereafter approved the finding of guilty and the sentence. We granted the accused's petition in order to resolve two issues concerning the admissibility of certain evidence.

Airman Rose Covington, a member of the Women in the Air Force, worked at Ent Air Force Base, Colorado, as an Accounting and Finance Specialist. Her office was located in Building S–35, her normal duty hours being from 8:00 a.m. to 5:00 p.m. On October 25, 1965, however, she decided to work late. A short time after 5:00 p.m., an airman dressed in Class A blue uniform came to her office door and reminded her to lock the windows and turn out the lights when she was finished. He left, and she heard him go to a nearby door, padlock it, and depart through the middle section of the Budget Office.

Fifteen minutes later, Airman Covington decided to go home. Taking her coffee cup and a soft drink bottle, she walked through the office, entered the hallway, was attacked, and only remembers being on the floor with someone on top choking her. She kicked and crawled away. Her male assailant, holding what appeared to be a metal ash stand, threatened to hit her if she screamed. His voice sounded the same as that of the airman who had earlier told her to lock the windows and turn out the lights. Her next recollection was of someone sponging her head.

Technical Sergeant Goad, a Budget Analyst working in the same building, entered it at 5:55 p.m. to perform janitorial duties. Turning on the hall lights, he observed an overturned ash stand covered with blood. In another hallway area, he found a great deal of blood on the floor. Near another cigarette stand, the blood was splattered on the wall to a height of six or seven feet. He immediately called the Air Police and, within a few minutes, Staff Sergeant Olson arrived.

Thereafter, in one passageway, glass and a broken pop bottle were found, while in the nearby men's room, they discovered two bottles, one broken, and a metal ash tray in the sink. Two metal ash trays were lying on the floor. Blood and a broken brush handle were

uncovered in the janitor's closet. In the staircase area, a woman's wristwatch with a broken strap was found, as well as a pair of woman's eye glasses, and a coffee cup with broken handle. Bloody footprints leading out of the building were also discovered. Airman Covington was ultimately found in the ladies' room. She was sitting in an upright position, surrounded by a pool of blood, wiping her battered head with her hands.

Upon being discovered, the victim was given emergency treatment at the Base Dispensary and then removed by ambulance to the nearby Air Force Academy hospital where surgery was performed. She was found to be suffering from a fractured skull, numerous lacerations of the head, and the loss of her front teeth. Following surgery, Airman Covington was confined to a bed in one of the hospital wards. According to the ward nurse, the girl showed signs of returning consciousness, finally asking if she was in the Academy hospital. When called by name, she was able to respond. She complained of pain and seemed in full control of her faculties. She was oriented as to time and place. The ward nurse asked the girl if she had been in an accident. Over defense objection, the nurse was permitted to testify the girl responded she wasn't in an accident. She then went on to relate that she had worked late at the office. She saw an airman put out the lights and check the doors. He then grabbed her and she kicked at him. The girl said, " 'He must have hit me; I don't remember what happened after that.' "

Special Agent Rossiter, Office of Special Investigations, had, on that very evening, talked with the accused after determining he was responsible for securing the office. The accused made a properly obtained statement acknowledging he was assigned to security duty on October 25, 1965; that, while performing his duties in Building S–35, he had seen a young lady still working; and that he had asked her to turn off the remaining lights. Having finished locking up, he left the building by a wing door, taking a 6:00 p.m. bus to his quarters.

By 10:30 p.m. on October 25th, the Federal Bureau of Investigation—in the person of Special Agent Rodgers—had assumed jurisdiction over the case. He dispatched two other agents to the Air Force Academy hospital to check on the victim's condition. On the basis of the information reported by these men, the accused was arrested in his quarters. A search was made incident to the arrest for articles of clothing that might bear bloodstains or in any way connect him with the crime. Shoes were taken from under his bed; an Air Force blue shirt from a chair; and a Class A blouse and trousers were removed from his locker. These latter items appeared slightly damp and bore. dark stains. When subjected to later examination, glass was found in the soles of the shoes, physically and optically matching that in the bottles picked up at the scene of the crime. Experts were also able to testify that shoe prints found at the scene compared to the appellant's shoes in size, design, and wear. The shoes contained bloodstains, as did the blue shirt, blouse, and trousers. Blood found on the ash tray and broken bottles matched that of the victim.

On the other hand, a companion of the accused, who had seen the latter on the evening of the 25th, testified that he noticed nothing unusual or suspicious about the accused's activities. He did, however, see the accused in the latrine washing out a blue dress shirt.

I

Turning to the two issues at hand, the first question inquires whether:

"THE VICTIM'S ORAL STATEMENT TO THE NURSE WAS ERRONEOUSLY ADMITTED AS A SPONTANEOUS EXCLAMATION EXCEPTION TO THE HEARSAY RULE."

The principle brought to the fore by this issue is one which has confronted the Court on numerous occasions. As long ago as United States v Mounts, 1 USCMA 114, 2 CMR 20, we agreed that evidence of an utterance involving the circumstances of a startling event is admissible where contemporaneously made by an excited, shocked, or surprised declarant. See also United States v Gaskin, 12 USCMA 419, 31 CMR 5;

Manual for Courts-Martial, United States, 1951, paragraph 142*b*; and Wigmore, Evidence, 3d ed, § 1761.

Appellate defense counsel, applying this standard to the facts of this case, find Airman Covington's oral statement inadmissible. It is contended that her comment was nothing more than a later expression of opinion of what she thought might have happened, as distinguished from a set of circumstances identifying her assailant. Being but an opinion that required reflection, it was, say counsel, not admissible. See 31A CJS, Evidence, §§ 403(1) and 421; Commonwealth v Fugmann, 330 Pa 4, 198 Atl 99 (1938); Shiflett v State, 38 Ala App 662, 93 So 2d 523, certiorari denied, 265 Ala 652, 93 So 2d 526 (1957); Manual for Courts-Martial, paragraph 142*b*, supra.

Moreover, contend counsel, the statement should likewise have been excluded, as it does not meet the requirement of spontaneity. It is urged that only when the utterance is made contemporaneously with the event to which it relates, can it be regarded as inspired by the event, and thus admissible. In appellate defense counsel's words, "The 'excited feeling' which makes the utterance 'spontaneous' must extend without let or breakdown from the moment of the event it illustrates." See United States v Mounts, supra.

Appellate Government counsel contrarily view the oral statement as admissible, arguing that the related facts and circumstances compel the reasonable inference it was spontaneous; that it was properly received as part of the *res gestae*; that the law officer's ruling was a discretionary matter, and, hence, should not be disturbed; and, finally, that the statement in question was cumulative and could not have prejudiced the accused. See Lampe v United States, 229 F2d 43 (CA DC Cir) (1956); Guthrie v United States, 207 F2d 19 (CA DC Cir) (1953); Beausoliel v United States, 107 F2d 292 (CA DC Cir) (1939); United States v Mounts, supra; Manual for Courts-Martial, paragraph 142*b*, supra.

On this factual record, we are not compelled nor required to pursue the question further. Taking the view of the defense and treating the statement as inadmissible hearsay, we nevertheless assess such errors for prejudice. United States v Isbell, 1 USCMA 131, 2 CMR 37; United States v Sessions, 10 USCMA 383, 27 CMR 457; United States v Murray, 15 USCMA 183, 35 CMR 155. Here, there was none.

Airman Covington, the supposed declarant, also testified at trial and, under oath, stated the voice of her assailant was the voice of the airman who had a short time earlier spoken to her regarding the windows and lights in her office. This is the substance of her remark made to the nurse and thus renders the latter merely cumulative. From the facts of the case, previously related, the glaring abundance of other evidence supporting the findings is obvious.

Unlike those cases where the evidence was in equipoise; not compelling; where the hearsay involved a violation of a substantial right as, for example, an acknowledgment of guilt by the accused; or where its use was so substantial that it became a "confirmation" of other prosecution evidence, there was a mere reiteration of what the record otherwise establishes. Cf. United States v Sessions, supra; United States v Wilson, 2 USCMA 248, 8 CMR 48; United States v Winters, 13 USCMA 454, 32 CMR 454; United States v Murray, supra; United States v Smith, 3 USCMA 15, 11 CMR 15. Accordingly, we find that the appellant suffered no harm.

II

The second issue before us inquires:

"Whether Exhibits 16–20 were subject to seizure as mere evidence of crime."

The enumerated exhibits consist of the accused's shoes as well as his blue Air Force shirt, blouse, and trousers, seized at the time of his arrest.

Appellate defense assert that only the fruits or instrumentalities of a crime may be lawfully seized, and because the items here are "mere evidentiary material," they are not subject to lawful seizure. United States v Askew, 14

USCMA 257, 34 CMR 37; United States v Rhodes, 3 USCMA 73, 11 CMR 73; United States v Rabinowitz, 339 US 56, 94 L ed 653, 70 S Ct 430 (1950); Harris v United States, 331 US 145, 91 L ed 1399, 67 S Ct 1098 (1947); Boyd v United States, 116 US 616, 29 L ed 746, 6 S Ct 524 (1886).

The Government rejects the "mere evidence" rule and, finding no violation of either the Fourth or Fifth Amendments, asks that we hold the clothing admissible.

Historically, the Supreme Court has imposed limitations on the items that can be the subject of a lawful seizure. In some instances, it has styled these objects in the manner described by the appellate defense counsel. Indeed, a majority of this Court in United States v Vierra, 14 USCMA 48, 33 CMR 260—relying on such past precedents therein cited—found a coffee shop card inadmissible, it being no more than a medium of advertisement as distinguished from a document " 'used as a means to effect the crimes.' " Vierra, supra, at page 53. The views expressed in Vierra must now, however, be construed in the light of the recent Supreme Court opinion in Warden v Hayden, 387 US 294, 18 L ed 2d 782, 87 S Ct 1642, 1 Criminal Law Reporter 3059, decided May 29, 1967. That case governs the case at hand.

In Hayden, supra, a Maryland court convicted the respondent of armed robbery after items of his clothing, seized during a search of his home, were admitted into evidence without objection. A divided Fourth Circuit Court of Appeals granted relief. That court, while upholding the validity of the search, nonetheless, declared Hayden correct in his contention that his clothing was wrongfully admitted into evidence. It reasoned the items had evidentiary value only and, therefore, were not subject to a lawful seizure.

The Supreme Court, in reversing the action taken by the Court of Appeals, observed: "Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband." The opinion thereafter concludes:

" . . . The 'mere evidence' limitation has spawned exceptions so numerous and confusion so great, in fact, that it is questionable whether it affords meaningful protection. But if its rejection does enlarge the area of permissible searches, the intrusions are nevertheless made after fulfilling the probable cause and particularity requirements of the Fourth Amendment and after the intervention of 'a neutral and detached magistrate. . . .' Johnson v United States, 333 US 10, 14. The Fourth Amendment allows intrusions upon privacy under these circumstances, and there is no viable reason to distinguish intrusions to secure 'mere evidence' from intrusions to secure fruits, instrumentalities, or contraband."

In short, the Supreme Court upheld admission in evidence of Hayden's clothing, believing there existed a link between the items seized and the criminal behavior involved in that the items found matched the description of those worn by the alleged robber. In addition, these items were neither "testimonial" nor "communicative" in nature; hence, their introduction did not compel the accused to become a witness against himself in violation of the Fifth Amendment.

When these standards are applied to the accused's clothing in the case at hand, the same result obtains. Accordingly, we find the evidence in question admissible.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.