UNITED STATES, Appellee,

v.

Richard T. MILLER, Private, U.S. Army, Appellant.

No. 63,521.

CM 8702683.

U.S. Court of Military Appeals.

Argued May 10, 1990.

Decided Sept. 27, 1990.

For Appellant: *Luther C. West,* Esq. (argued); *Captain Gregory G. Gross* (on brief).

For Appellee: *Major Martin D. Carpenter* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on briefs); *Major Gary L. Hausken.*

*Opinion of the Court*

EVERETT, Chief Judge:

A general court-martial composed of officer members tried Miller on charges that "during the early morning hours of 11 Au-

gust 1987," he had committed the premeditated murder, felony-murder, and the rape of Specialist Emma Jean Kumre at McNair Kaserne, Federal Republic of Germany, in violation of Articles 118 and 120, Uniform Code of Military Justice, 10 USC §§ 918 and 920, respectively. The charges had been referred as capital by the convening authority.

Contrary to his pleas, appellant was found guilty of premeditated murder and rape (the felony-murder charge was dismissed as multiplicious); and the members sentenced him to dishonorable discharge, confinement for life, total forfeitures, and reduction to the grade of E–1. The convening authority approved the sentence; and the Court of Military Review affirmed the findings and sentence. 28 MJ 998 (1989).

We granted appellant's petition for review on this issue:

> WHETHER THE FAILURE OF THE MILITARY JUDGE TO GIVE AN INSTRUCTION *SUA SPONTE* ON THE VOLUNTARINESS OF THE CONFESSION PREJUDICED THE SUBSTANTIAL RIGHTS OF APPELLANT.

After hearing oral argument, we specified this additional issue from the bench:

> WHETHER THE MILITARY JUDGE ERRED BECAUSE HE HAD A *SUA SPONTE* DUTY TO LITIGATE, MAKE SPECIAL FINDINGS, AND ISSUE A RULING ON THE VOLUNTARINESS OF APPELLANT'S CONFESSION WHERE APPELLANT DID NOT OBJECT TO ADMISSIBILITY OF HIS CONFESSION PRIOR TO TRIAL PURSUANT TO MILITARY RULE OF EVIDENCE 304 OR PRIOR TO THE CONFESSION'S ADMISSION INTO EVIDENCE AT TRIAL OR AT ANYTIME ON APPEAL.

I

At trial, the Government relied on circumstantial evidence concerning the offense and on oral statements made by appellant on August 11 to Special Agent Thompson of the Criminal Investigation

Command (CID). Although the defense had made various pretrial motions for relief, it made no motion to suppress these statements or any objection at trial to their introduction.

The defense presented alibi evidence. Also, both from government and defense witnesses, defense counsel adduced testimony that Miller had ingested alcohol and lysergic acid diethylamide (LSD) shortly before the alleged offenses had occurred. The defense offered two expert witnesses, Dr. Statham and Dr. Brooks, who opined that Miller's ability accurately to recall and relate the events of the recent past when interrogated by Special Agent Thompson on August 11, would have been impaired by the LSD that he had consumed. Moreover, in response to a question from the judge, Dr. Brooks expressed doubt that Miller would have understood the warning as to his rights that he had received from the CID agent before making any statements.

With this evidence in mind, the military judge gave this instruction at the request of the defense:

A pretrial statement by the accused has been admitted into evidence through the testimony of Special Agent Thompson. The defense has introduced evidence that the accused's statement was obtained while he was under the influence of LSD, hashish and alcohol. It is for you to decide the weight or significance, if any, such a statement deserves under all the circumstances. In deciding what weight or significance, if any, to give to the accused's statement, you should consider the specific evidence offered on the matter, including that of the Special Agents who interrogated the accused, as well as that of Dr. Statham and Dr. Brooks. You should also consider your own common sense and knowledge of human nature, and the nature of any corroborating evidence, as well as the other evidence in this trial in making this determination.

However, the military judge never made any specific finding that Miller's statements to the CID had been voluntary.

During oral argument prior to the findings, defense counsel contended at length that the court members should give little, if any, weight to Miller's statements to the CID. According to the defense, the alcohol and LSD which appellant had consumed rendered him very suggestible at the time of the interrogation; and he had presented to the CID agents a version of events which they had implanted in his mind just before. However, the defense made no further request that the court members be advised concerning the voluntariness of Miller's statements.

## II

### A

At common law involuntary confessions were excluded from evidence on grounds of unreliability.[1] Moreover, trial judges ruled finally on the voluntariness of confessions with respect to their admissibility into evidence; but the jury could still consider a confession's voluntariness and the circumstances under which it was made in deciding what weight, if any, should be given it. This Court observed in *United States v. Dykes*, 5 USCMA 735, 744, 19 CMR 31, 40 (1955), "that to adopt this approach—regarded by Professor Morgan and Dean Wigmore as the orthodox one—is sound not only in theory, but in terms of easy administration as well."

In recent decades, the Supreme Court has broadened the rationale for excluding involuntary confessions from evidence. As the Court pointed out in *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908, 915 (1964), "[I]t is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside

---

1. Since inadmissibility was premised on unreliability, it was arguable that a confession—even if

involuntary—was admissible if its truthfulness had been adequately corroborated.

from the confession to support the conviction." (Citation omitted.) *See also Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

Perhaps as a result of the newly recognized grounds for exclusion of involuntary confessions, Massachusetts and some other states adopted a procedure whereunder not only the judge but also the jury must determine that a confession is voluntary before its contents can even be considered by the jury. *See Jackson v. Denno, supra* 378 U.S. at 378–79, 84 S.Ct. at 1781–82, 12 L.Ed.2d at 916–17. Under the Massachusetts procedure, not only must the judge decide that a confession is voluntary before receiving it in evidence, but also he must instruct the jurors that, unless they find that the confession was voluntary, they must disregard it entirely.[2]

Early in its history, this Court discussed how responsibilities should be allocated between the law officer (now military judge) and the members of a general court-martial in determining the voluntariness of a confession. In choosing the orthodox procedure over the Massachusetts procedure, Judge Brosman wrote for the majority:

> With proper attention to the wording of the Code and the several declarations of scholarly authorities in the field of evidence, we are sure that members of a court-martial labor under no more than a single task with respect to a confession assailed as involuntary. That chore is to determine the weight and credibility of the confession with due recognition of the human experience indicating that involuntariness diminishes the trustworthiness of a statement. If the court-martial concludes that the confession was involuntary, it is free in its deliberations on the guilt or innocence of the accused to disregard it entirely as being totally un-

worthy of belief and without weight or credit.

5 USCMA at 743–44, 19 CMR at 39–40.

In *United States v. Higgins,* 6 USCMA 308, 20 CMR 24 (1955), the Court reaffirmed its position and ruled that, as to defense objections that an accused's statement was involuntary or had been obtained without an adequate warning under Article 31(b), UCMJ, 10 USC § 831(b), the law officer's ruling was final as to admissibility, although the same circumstances could properly be considered by the court members in determining what weight, if any, should be given to the statement.

In *Dykes,* Judge Latimer only concurred in the result because he concluded that the Massachusetts procedure should apply to courts-martial and that the members must be instructed, "If you do not determine beyond a reasonable doubt that the statement was voluntary, *you must reject it and disregard it as evidence in the case.*" 5 USCMA at 747, 19 CMR at 43. Although in *Higgins,* the opinion of the Court was unanimous and relied on *Dykes,* in later cases the Court moved toward the position taken by Judge Latimer's separate opinion. *Cf. United States v. Himmler,* 9 USMCA 115, 25 CMR 377 (1958); *United States v. Williams,* 7 USCMA 434, 22 CMR 224 (1956). Thus, in *United States v. Graves,* 1 MJ 50, 52 (CMA 1975), Chief Judge Fletcher stated:

> In military practice, the trial judge must make an interlocutory ruling that a proffered confession is voluntary before admitting the statement into evidence. Additionally, if the matter is placed in issue before the jury, the Government must present evidence sufficient to establish, beyond a reasonable doubt, that the inculpatory statement was voluntary. *Once the issue is raised, the military judge has a sua sponte duty to instruct the court members to reject the accused's confession in toto if they are*

---

**2.** The Supreme Court held unconstitutional in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), a New York variation of the Massachusetts procedure. "Under the New York rule, the trial judge must make a prelimi-

nary determination regarding a confession offered by the prosecution and exclude it if in no circumstances could the confession be deemed voluntary." *Id.* at 377, 84 S.Ct. at 1781, 12 L.Ed.2d at 916 (footnote omitted).

*not satisfied beyond a reasonable doubt, of the voluntariness of the statement.*

(Footnotes omitted; emphasis added.)

Appellant relies on this pronouncement in contending that the military judge should have instructed the court members *sua sponte* that, unless they determined beyond a reasonable doubt that his statement was voluntary, they must disregard it entirely.

### B

Appellant's contention would be more plausible if *Graves* were still a binding precedent.[3] However, the Military Rules of Evidence, which took effect several years after *Graves* was decided, dictate a result different from what appellant seeks.

■ Mil.R.Evid. 304(a), Manual for Courts–Martial, United States, 1984, which concerns "confessions and admissions," states the general rule that "an involuntary statement or any derivative evidence therefrom may not be received in evidence against an accused who made the statement if the accused makes a timely motion to suppress or an objection to the evidence under this rule." The negative implication of this language is that, unless the defense moves to suppress the statement or objects to its reception in evidence, the statement may be admitted by the military judge.

Mil.R.Evid. 304(d)(2)(A) is more explicit and provides:

Motions to suppress or objections under this rule or Mil.R.Evid. 302 [privilege concerning mental examination of an accused] or 305 [warnings obout rights] to

statements that have been disclosed shall be made by the defense prior to submission of a plea.[4]

Clearly, this rule intends to place on the defense the burden of complaining that a confession or admission is involuntary or was obtained without a warning to the accused of his rights. The corollary is that, absent an appropriate defense objection or motion, the defense waives any issue as to admissibility of the accused's confession. Mil.R.Evid. 304(d)(2)(A).

Mil.R.Evid. 304(e) provides, "When an appropriate motion or objection has been made by the defense under this rule, the prosecution has the burden of establishing the admissibility of the evidence." Once again, the negative implication is that, in the absence of "an appropriate motion or objection," the prosecution has no burden of establishing admissibility.

■ We observe also that under Mil.R. Evid. 304(e), the Government no longer is required to establish before the jury the voluntariness of a confession beyond a reasonable doubt. Instead, "[t]he military judge must find by a preponderance of the evidence that a statement by the accused was made voluntarily before it may be received into evidence." *See* Drafters' Analysis to Mil.R.Evid. 304(e), Manual, *supra* at A22–12 (Change 2). This reduction of the Government's burden of proof does not violate constitutional requirements, *see Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); and it falls within the President's delegated power to prescribe rules of evidence and rules of proce-

---

**3.** Under *United States v. Graves,* 1 MJ 50, 52 (CMA 1975), the quoted passage from *Graves* might be read to mean that, as a prerequisite for the requirements imposed upon the Government, the manner of involuntariness must be "placed in issue before the jury" and that, until this is done, the Government is not required to establish beyond a reasonable doubt that the inculpatory statement was voluntary or the military judge to instruct the court members that they must reject the confession all together if they are not satisfied beyond a reasonable doubt of its voluntariness. In the present case, it might be questioned whether voluntariness was

ever "placed in issue before the jury" by appellant's counsel.

**4.** The requirement that the defense move to suppress or object is paralleled by the requirement that "[p]rior to arraignment, the prosecution shall disclose to the defense the contents of all statements, oral or written, made by the accused that are relevant to the case, known to the trial counsel, and within the control of the armed forces." Mil.R.Evid. 304(d)(1), Manual for Courts–Martial, United States, 1984.

dure for courts-martial. *See* Art. 36, UCMJ, 10 USC § 836.[5]

As we read the record, the defense never sought to contest the voluntariness of Miller's statements to CID Agent Thompson, even though there might have been some basis for doing so. Instead, the defense contended that, because of the LSD and alcohol appellant had consumed, any statement by him was untrustworthy and entitled to no weight.

The instruction requested by the defense and given by the military judge conformed to this theory. It properly recognized that, under the Military Rules of Evidence, the court members are to be concerned only with the weight of the evidence admitted by the military judge and have no occasion to consider its admissibility. *See* Drafters' Analysis, *supra.*

■ We conclude also that the defense's failure to contest the voluntariness of Miller's statement did not reflect any lack of effective representation by his counsel. Special Agent Thompson had testified that appellant had been alert during the interrogation and that there was no evidence of intoxication. Although Thompson had not asked Miller whether he was suffering from the effects of any drug, he apparently perceived no reason at the time to make such an inquiry.

Miller's defense team—an experienced civilian lawyer and a military counsel—apparently concluded that, if an objection were made to the voluntariness of appellant's statements to the CID, the Government could readily carry its burden of proof by a preponderance of the evidence. Instead of fruitlessly contesting admissibility of Miller's pretrial statements, the defense opted only to contest their weight and credibility before the court members. In our view, this tactical decision was reasonable and did not display any lack of competence on the part of the defense counsel.

**5.** The President could have continued to require that the Government prove voluntariness be-

## C

Mil.R.Evid. 304(e) contemplates that, when an objection has been made to admissibility of the accused's statements because of its involuntariness, the military judge will make findings on this issue. The defense now contends that, whether voluntariness has been contested, the military judge must make such findings, and it claims that failure to do so in this case constituted prejudicial error.

We disagree. As we interpret Mil.R. Evid. 304, the military judge's obligation to make findings exists only when there has been some contest as to whether an accused's statement was voluntary or was preceded by the necessary warnings of his rights. In this regard, the practice now prescribed by the Manual for Courts–Martial conforms to that followed in many other jurisdictions.

In *Wainwright v. Sykes*, 433 U.S. 72, 88–89, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594, 609 (1977), the Supreme Court considered a claim by the accused in a habeas corpus proceeding that his confession introduced by the prosecution at trial had been involuntary. However, there had been no objection at trial on this ground, so the Supreme Court denied relief. It pointed out:

Language in subsequent decisions of this Court [after *Jackson v. Denno, supra* ] has reaffirmed the view that the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession.

*Id.* 433 U.S. at 86, 97 S.Ct. at 2506 (footnote omitted). The Court explained:

A contemporaneous objection enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding. It enables the judge who observed the demeanor of those witnesses to make the factual determinations necessary for

yond reasonable doubt if he had chosen to do so.

properly deciding the federal constitutional question.

. . . . .

A contemporaneous-objection rule may lead to the exclusion of the evidence objected to, thereby making a major contribution to finality in criminal litigation. Without the evidence claimed to be vulnerable on federal constitutional grounds, the jury may acquit the defendant, and that will be the end of the case; or it may nonetheless convict the defendant, and he will have one less federal constitutional claim to assert in his federal habeas petition.[6]

*Id.* at 88–89, 97 S.Ct. at 2507 (footnote omitted).

■ Even though we recognize that in *Wainwright v. Sykes, supra,* the Supreme Court was dealing with a federal habeas corpus attack on a state court conviction, we conclude that the result and rationale would be equally applicable to direct appeal. From this we infer that the President was not constitutionally precluded from prescribing a procedure whereunder the military judge conducts a hearing on the voluntariness of an offered confession by the accused and makes findings as to voluntariness only if the defense raises this issue by a motion to suppress or a timely objection at trial. Furthermore, since the contemporaneous-objection rule has a rational basis and is used in many jurisdictions, we are sure that the President acted within his statutory powers under Article 36 of the Code when he adopted this rule.

**6.** In *Jackson v. Denno, supra,* the Supreme Court said:

> Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession.
>
> 378 U.S. at 376–77, 84 S.Ct. at 1780–81.
>
> \* \* \* \* \* \*
>
> A defendant objecting to the admission of a confession is entitled to a fair hearing in

■ Here, the defense had ample opportunity to make a voluntariness objection and thereby to obtain the benefit of the various safeguards offered by Mil.R.Evid. 304. Under that rule, as we interpret it, the defense's failure to make a motion to suppress or to interpose an objection on voluntariness grounds obviated any duty that otherwise would have existed for the military judge to make specific findings as to the voluntariness of Miller's statements to the CID or to instruct thereon.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

SULLIVAN, Judge (concurring):

As noted by the court below, *United States v. Graves,* 1 MJ 50 (CMA 1975), is expressly based on paragraph 140(a)(2), Manual for Courts–Martial, United States, 1969 (Revised edition). It is no longer in effect since it was replaced by Mil.R.Evid. 304, Manual, *supra* (Change 3, 1980). Absent a constitutional requirement for presenting the members with the voluntariness question in addition to the standard credibility question (*see Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)), the specific holding of *United States v. Graves, supra,* is simply inapplicable. However, its more general pronouncements concerning the responsibility of the military judge where viable legal issues are raised by the record should not be lightly discounted.

> which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.
>
> 378 U.S. at 376–77, 380, 84 S.Ct. at 1780–81, 1783.
>
> We infer that there is no constitutional right to this hearing and determination by the judge if there is no defense objection.